

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X          Index No.: 11-CV-3321

BRIAN JOHNSTON & NILE CHARLES,

                Plaintiffs,

              -against-                        **AMENDED**
                                                        **COMPLAINT**

APPLE INC. & OMNISCIENT INVESTIGATION CORP.,

                Defendants.

------------------------------------------------------------X

Plaintiffs Brian Johnston and Nile Charles, by their attorneys, Derek T. Smith Law Group, P.C., complain of Defendants as follows:

## NATURE OF THE CASE

1. Plaintiffs complain pursuant to the laws of the New York common law, and the Civil Rights Act of 1866, Sections 1981 and 1982, seeking damages to redress the injuries Plaintiffs have suffered as a result of being discriminated against by Defendants based on their race (African American.)

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §12101 et. Seq.; 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3. Venue is proper in this district based upon Defendant's residency within the County of Suffolk, State of New York, within the Eastern District of New York. 28 U.S.C. §1391(b).

## PARTIES

4. That at all times material, Plaintiff JOHNSTON is a resident of the State of New York, County of New York.

Case 1:11-cv-03321-JSR   Document 13   Filed 06/08/11   Page 2 of 9

5.  Plaintiff JOHNSTON is an African American male, with 34 years of age.

6.  That at all times material, Plaintiff CHARLES is a resident of the State of New York, County of New York.

7.  Plaintiff NILE is an African American male, with 25 years of age.

8.  That at all times material, Defendant APPLE INC. was and is a foreign business corporation duly existing by virtue of the laws of the State of California.

9.  That at all times material, Defendant APPLE INC was and is a foreign business corporation authorized to conduct business in the State of New York.

10.  That at all times material, Defendant APPLE INC. was and is a foreign business corporation that conducts business in the State of New York.

11.  That at all times material, Defendant OMNISCIENT INVESTIGATION CORPORATION ("OIC") was and is a New York Corporation, licensed to do business in the state of New York and having a principal place of business in Liberty, New York.

12.  Defendants APPLE INC. and OIC are herein after referred to as "Defendants."

13.  Defendants' actions were jointly undertaken and Defendants' employees are and were operating together and indistinguishable from each other at all relevant times.

14.  Employees for Defendants were acting as agents for each corporation and each corporation is jointly and severally liable for the actions of their employees and agents.

15.  At all times material, Defendants own and/or manage and/or operate within a retail store located at 1981 Broadway New York City, NY 10023.

## FACTS

16.  Plaintiffs are long time customers of Defendant Apple Inc..

17.  Plaintiff JOHNSTON owns the following products sold by Defendant Apple Inc.: IPAD,

MAC BOOK, Power MAC G-4, and an I-TOUCH.

18.     Plaintiff CHARLES owns the following products sold by Defendant Apple Inc.:   IPAD,

         IPOD, and a VIDEO IPOD.

19.     On or about December 9, 2010, Plaintiffs visited Defendants' aforementioned retail store.

20.     Plaintiffs were dressed in baggy jeans and large sweaters with hoods.

21.     Plaintiffs were lawfully at Defendants' retail store.

22.     Plaintiffs were at Defendants' retail store to purchase personal property.

23.     Plaintiffs purchased headphones from Defendants' retail store.

24.     Plaintiffs made their purchase in the basement of Defendants' retail store and proceeded

         upstairs.

25.     At approximately 3:20 pm, Plaintiffs were standing on the entry level of the Defendants'

         retail store and were approached by one of Defendants' employees (believed to be a security

         guard) in khaki pants and a black shirt.  Defendants' employee was a Caucasian male, in his

         50's with salt and pepper hair, was about 6 feet and 2 inches tall, and weighed about 225

         pounds.

26.     Defendants' employee approached Plaintiffs in an intimidating fashion invading their

         personal space (coming within inches of Plaintiffs) and said, "You know the deal. You

         know the deal."

27.     Defendants' employee told Plaintiffs, **"Either you're here to see a Mac Specialist or to

         purchase something.  If you are not doing either you have to leave the store."**

28.     Before the Plaintiffs could respond, Defendants' employee and responded, <u>**"And before

         you say I'm racially discriminating against you  let me stop you.  I am discriminating**

         **against you. I don't want "your kind"  hanging out in  the store."**</u>

29.   Plaintiffs were shocked and humiliated at the racist remark made by Defendants' employee.

30.   After Defendants' employee made the racist remark, Plaintiffs used their cell phones to
      record what transpired when another employee of Defendants approached Plaintiffs.

31.   Defendants' employee then told Plaintiffs, **"Now you have to go. If you want to know
      why, it's because I said so. CONSIDER ME GOD. You have to go."**

32.   Plaintiffs asked to speak to a manager to file a complaint. Defendants' Head of Security
      told Plaintiffs that there was no complaint to be made and walked away from the Plaintiffs,
      deliberately ignoring their request to see a manager.

33.   Plaintiffs searched the retail store and found a manager. Before Plaintiffs could explain their
      situation to the manager, Defendants' Head of Security interjected and said, "I asked them if
      they needed a specialist."

34.   Plaintiffs complained about the Defendants' employees' racial profiling and pointed out that
      none of the Caucasian customers were being approached by Defendants' employees or
      asked to leave.

35.   In order to further harass, degrade, humiliate, and discriminate against Plaintiffs, the
      manager asked Defendant's Head of Security to call 911.

36.   Defendants interfered with Plaintiffs right to purchase personal property because of their
      race.

37.   Defendants' actions and conduct was intentional and intended to harm Plaintiffs.

38.   As a result of Defendants' actions, Plaintiffs felt extremely humiliated, degraded,
      victimized, embarrassed, ridiculed and emotionally distressed.

39.   As a result of the Defendants' discriminatory and intolerable treatment of Plaintiffs, they
      suffered severe emotional distress.

Case 1:11-cv-03321-JSR   Document 13   Filed 06/08/11   Page 5 of 9

40.   As a result of the acts and conduct complained of herein, Plaintiffs have suffered and will continue to suffer emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiffs have further experienced severe emotional distress.

41.   As a result of the above Plaintiffs have been damaged in an amount which exceeds the jurisdiction limits of all lower Courts.

42.   As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.   As such, the Plaintiffs demand Punitive Damages as against Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## NEGLIGENCE

43.   Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

44.   That Defendants were careless and reckless in hiring and retaining as and for its employee, agent and/or servant the subject management personnel; in that the said personnel lacked the experience, deportment and ability to be employed by Defendants in that the Defendants failed to exercise due care and caution in their hiring practices, and in particular, in hiring the management personnel, who lacked the mental capacity and the ability to function as employees of the aforementioned Defendants; in that aforesaid Defendants failed to investigate the background of the management personnel, in that they hired and retained as employee of their business establishment said individuals who lacked the maturity, sensibility and intelligence to be employed by the Defendants; in that the Defendants knew of the lack of ability, experience, deportment and maturity of said management personnel when they hired them to be employed; and, in that Defendants, its agents, servants and employees were otherwise careless, negligent and reckless.

Case 1:11-cv-03321-JSR   Document 13   Filed 06/08/11   Page 6 of 9

45. That Plaintiffs claim negligent supervision, hiring, training and retention.

46. That by reason of the aforesaid, Plaintiffs have been damaged in an amount, which exceeds the jurisdictional limits of all lower courts in compensatory damages and in an amount, which exceeds the jurisdictional limits of all lower courts in punitive damages.

## AS A SECOND CAUSE OF ACTION
### 42 U.S.C. Section 1981

47. Plaintiffs repeat and reallege each and every paragraph above as if said paragraph was more fully set forth herein at length.

48. 42 U.S.C Section 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

Case 1:11-cv-03321-JSR   Document 13   Filed 06/08/11   Page 7 of 9

49. Plaintiffs, members of the Black and/or African-American race, were discriminated against because of their race as provided under 42 USC Section 1981 and have suffered damages as set forth herein.

## AS A THIRD CAUSE OF ACTION
### 42 U.S.C. Section 1982

50. Plaintiffs repeat and reallege each and every paragraph above as if said paragraph was more fully set forth herein at length.

51. Civil Rights Act of 1866 Section 1982 states in relevant parts as follows:

(a) All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to inherit, purchase, lease, sell, hold, and convey real and personal property to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

52. Plaintiffs, members of the Black and/or African-American race, were discriminated against because of their race as provided under 42 USC Section 1982 and have suffered damages as set forth herein.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER NEW YORK STATE EXECUTIVE LAW ARTICLE 15 § 296

53. Plaintiffs repeat and reallege each and every paragraph above as if said paragraph was more fully set forth herein at length.

54. New York State Executive Law § 296 (2)(a) states:

"It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited."

55.   Defendants violated the section cited herein as set forth.

56.   That as a direct result of the foregoing, Plaintiffs have been damaged in an amount which

exceeds the jurisdictional limits of all lower Courts.

## AS A FIFTTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK TITLE-8

57.   Plaintiffs repeat and reallege each and every paragraph above as if said paragraph was

more fully set forth herein at length.

58. The Administrative Code of the City of New York states:

§ 8-107 Unlawful discriminatory practices. 4) Public accommodations. (a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, or, directly or indirectly, to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, age, gender,

disability, marital status, partnership status, sexual orientation or alienage or citizenship status or that the patronage or custom of any person belonging to, purporting to be, or perceived to be, of any particular race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status is unwelcome, objectionable or not acceptable, desired or solicited.

59. Defendants violated the section cited herein as set forth.

60. That as a direct result of the foregoing, Plaintiffs have been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## JURY DEMAND

Plaintiffs demand a jury trial

**WHEREFORE**, Plaintiffs demands judgment against Defendants in an amount which is not determinable at this time but exceeds $75,000.00 for each Plaintiff and additional monies in compensatory and in punitive damages on all Causes of Action, together with costs and disbursements.

DATED:     New York, New York
           June 8, 2011

Respectfully Submitted,

By: William K. Phillips, Esq.
Of Counsel
DEREK T SMITH LAW GROUP, P.C.
30 Broad Street, 35th Floor
New York, New York 10004
(212) 587-0760