UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BRIAN JOHNSTON and NILE CHARLES,

                Plaintiffs,

    -against-

APPLE INC. & OMNISCIENT INVESTIGATION CORP.,

                Defendants.
------------------------------------------------------------X

Index No.: 11-CV-3321
(JSR)

**SECOND AMENDED COMPLAINT**

Plaintiffs Brian Johnston and Nile Charles, by their attorneys, complain of Defendants as follows:

## NATURE OF THE CASE

1. Plaintiffs complain pursuant the Civil Rights Act of 1866, Section 1982, the New York State Human Rights Law ("NYSHRL") and the New York City Administrative Code, Human Rights Law ("NYCHRL") seeking damages to redress the injuries Plaintiffs have suffered as a result of being discriminated against by Defendants based on their race (African American.)

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §12101 et. Seq.; 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3. Venue is proper in this district based upon Defendants' business locations and operations located within New York City, New York County in the State of New York and within the Southern District of New York and pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. That at all times material, Plaintiff JOHNSTON is a resident of the State of New York,

County of New York.

5. Plaintiff JOHNSTON is an African American male, with 34 years of age.

6. That at all times material, Plaintiff CHARLES is a resident of the State of New York, County of New York.

7. Plaintiff CHARLES is an African American male, with 25 years of age.

8. That at all times material, Defendant APPLE INC. was and is a foreign business corporation duly existing by virtue of the laws of the State of California.

9. That at all times material, Defendant APPLE INC was and is a foreign business corporation authorized to and does in fact conduct business in the State of New York.

10. That at all times material, Defendant OMNISCIENT INVESTIGATION CORPORATION ("OIC") was and is a New York Corporation, licensed to do business in the state of new york and having a principal place of business in Liberty, New York.

11. Defendants APPLE INC. and OIC are herein after referred to as "Defendants."

12. At all times material, Defendant APPLE INC owns or leases a retail store located at 1981 Broadway New York City, NY 10023 ("Broadway Store") for the purposes of selling, servicing and marketing retail merchandise.

13. At all times material, Defendant OIC has contracted with Defendant APPLE INC to provide "Security Personnel" for the purpose of securing the premises at Defendants' Broadway Store and in order to prevent loss from theft or other illegal actions.

14. Upon information and belief, this Security Personnel qualify as employees of both Defendant APPLE INC and Defendant OIC.

15. Upon information and belief the Security Personnel have apparent authority to act on behalf of Defendant APPLE INC and further this apparent authority is communicated to the

general public by Defendant APPLE INC permitting Security Personnel to work within the Broadway Store without restriction and to speak on their behalf, as was the case in the situation detailed herein  This apparent authority creates a master-servant relationship between Security Personnel and Defendant APPLE INC.

16. Further, Security Personnel have apparent authority which is supported by Defendant APPLE INC's managements' acts which support and condone Security Personnel actions, as detailed herein.

17. Defendant APPLE INC, by contract, requires that Security Personnel report all inappropriate or suspicious behavior to Defendant APPLE INC employees or management.

18. Defendant APPLE INC, by contract, requires that Security Personnel perform services under a standard of behavior or process set forth by Defendant APPLE INC.

19. Security Personnel may act as a liaison for Defendant APPLE INC with local law enforcement as directed by Defendant APPLE INC. This permits Security Personnel to act as Defendant APPLE INC's agent in that respect.

20. Defendant OIC must coordinate all actions with Defendant APPLE INC's employee.

21. Defendant APPLE INC maintains the right to request specific types of Security Personnel from a number of acceptable backgrounds and credentials from Defendant OIC.

22. All work performed by Security Personnel is done within Defendant APPLE INC's Broadway Store.

23. All work performed by Security Personnel occurs within the time limits and restrictions imposed by Defendant APPLE INC's store operation hours.

24. Defendant APPLE INC requires by contract that all Security Personnel comply with Defendant APPLE INC's SOP Manual and all Post Orders given while they are working in

the Broadway Store, which upon information and belief allows Defendant APPLE INC to add additional tasks to Security Personnel job duties.

25. Defendant OIC Security Personnel must provide incident reports in a format designated and required by Defendant APPLE INC.

26. Security Personnel are required to implement loss prevention tools and techniques at the direction of Defendant APPLE INC's employees.

27. In these ways and others Defendant APPLE INC utilizes Defendant OIC's Security Personnel in a Master-Servant context. In other words, Defendant APPLE INC controls the means of carrying out the tasks required of them through contractual obligation, standards and procedures provided in writing and through oversight by Defendant APPLE INC employees.

28. Security Personnel act both with apparent and limited actual authority on behalf of Defendant APPLE INC as controlled by Defendant APPLE INC personnel.

29. The relationship which is created between Defendant APPLE INC and Security Personnel is one of an Employer to Employee.

## MATERIAL FACTS

30. Plaintiffs are long time customers of Defendant APPLE INC.

31. Plaintiff JOHNSTON owns the following products sold by Defendant APPLE INC.: IPAD, MAC BOOK, Power MAC G-4, and an I-TOUCH

32. Plaintiff CHARLES owns the following products sold by Defendant APPLE INC.: IPAD, IPOD, and a VIDEO IPOD

33. On or about December 9, 2010, Plaintiffs visited Defendants' Broadway Store.

34. Plaintiffs were dressed in baggy jeans and large sweaters with hoods.

35. Plaintiffs were lawfully present in Defendants' Broadway Store.

36. Plaintiffs were at Defendants' Broadway Store to purchase personal property.

37. Plaintiffs purchased headphones from Defendants' Broadway Store.

38. Plaintiffs made their purchase in the basement of Defendants' Broadway Store and proceeded upstairs.

39. At approximately 3:20 p.m., Plaintiffs were standing on the entry level of the Defendants' Broadway Store and were approached by one of Defendants' employees, now known to be Security Personnel, wearing in khaki pants and a black shirt.

40. Upon information and belief, this individual is subject to the same oversight and requirements as all other Security Personnel and as alleged herein.

41. Defendants' Security Personnel who approached them was a Caucasian male, in his 50's with salt and pepper hair, was about 6 feet and 2 inches tall, and weighed about 225 pounds ("John Doe").

42. John Doe approached Plaintiffs and said, "You know the deal. You know the deal."

43. John Doe told Plaintiffs, **"Either you're here to see a Mac Specialist or to purchase something. If you are not doing either you have to leave the store."**

44. When Plaintiffs protested, John Doe responded, <u>"And before you say I'm racially discriminating against you let me stop you. I am discriminating against you. I don't want 'your kind' hanging out in the store."</u>

45. Plaintiffs were shocked and humiliated by the racist remark made by John Doe.

46. After John Doe made the racist remark, Plaintiffs used their cell phones to record what transpired when another of Defendants' Security Personnel approached Plaintiffs.

47. The second of Defendants' Security Personnel to approach Plaintiffs identified himself as

the Head of Security and told Plaintiffs, "**Now you have to go. <u>If you want to know why, it's because I said so.</u> CONSIDER ME GOD. You have to go.**"

48. Plaintiffs asked to speak to a manager to file a complaint. Defendants' Head of Security told Plaintiffs that there was no complaint to be made and walked away from the Plaintiffs, deliberately ignoring their request to see a manager.

49. Plaintiffs searched the retail store and found a manager who, upon information and belief, works exclusively for Defendant APPLE INC. Before Plaintiffs could explain their situation to the manager, Defendants' Head of Security interjected and said, "I asked them if they needed a specialist."

50. Due to this interjection and the perceived submission to Defendant APPLE INC's manager, it was apparent that Defendants' Security Personnel were subordinate to Defendant APPLE INC's management.

51. Plaintiffs complained about the John Doe's racial profiling and pointed out that none of the Caucasian customers were being approached by Defendants' Security Personnel or asked to leave.

52. Further, at no point was there any accusation made against Plaintiffs that they had done anything improper. In direct contrast, Plaintiffs were merely present in the store in the same manner as other, non-Black customers and confronted by John Doe and told that they had to leave and that they were being discriminated against.

53. In order to further harass, degrade, humiliate, and discriminate against Plaintiffs, Defendant APPLE INC's manager asked Defendants' Head of Security to call 911.

54. This was despite knowledge of Plaintiffs' complaints and in furtherance of the discriminatory acts being committed by Defendants' Security Personnel.

55. Plaintiffs were then required to leave the premises by Defendant APPLE INC's employee with Defendants' Security Personnel.

56. Defendants interfered with Plaintiffs right to purchase personal property because of their race by removing them from the location where it could be purchased.

57. Defendants' actions and conduct was intentional and intended to harm Plaintiffs.

58. John Doe acted with racial animus and intentionally discriminated against Plaintiffs.

59. Defendant APPLE INC's manager condoned John Doe's acts and further participated in removing Plaintiffs from the store due to racial animus. Defendant APPLE INC's manager thus intentionally discriminated against Plaintiffs.

60. As a result of Defendants' actions, Plaintiffs felt extremely humiliated, degraded, victimized, embarrassed, ridiculed and emotionally distressed.

61. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiffs, they suffered severe emotional distress.

62. As a result of the acts and conduct complained of herein, Plaintiffs have suffered and will continue to suffer emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

63. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. Further, and evidenced by John Doe's statements and Defendant APPLE INC's manager's indifference to Plaintiffs' complaints of discriminatory treatment, Defendants' actions were made with at the very least a reckless indifference to the New York State, New York City and Federal laws prohibiting discriminatory treatment.

## AS A FIRST CAUSE OF ACTION
## 42 U.S.C. Section 1982

64. Plaintiffs repeat and reallege each and every paragraph above as if said paragraph was more fully set forth herein at length.

65. Civil Rights Act of 1866 Section 1982 states in relevant parts as follows:

> (a) All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to inherit, purchase, lease, sell, hold, and convey real and personal property to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

66. Plaintiffs, members of the Black and/or African-American race, were discriminated against because of their race as prohibited under 42 USC Section 1982 and have suffered damages as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION
## UNDER NEW YORK STATE EXECUTIVE LAW ARTICLE 15 § 296

67. Plaintiffs repeat and reallege each and every paragraph above as if said paragraph was more fully set forth herein at length.

68. New York State Executive Law § 296 (2)(a) states:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or

> advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited."

69. Defendants violated the section cited herein as set forth.

70. That as a direct result of the foregoing, Plaintiffs have been significantly damaged.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK § 8-107

71. Plaintiffs repeat and reallege each and every paragraph above as if said paragraph was more fully set forth herein at length.

72. The Administrative Code of the City of New York § 8-107 states:

> Unlawful discriminatory practices. 4. Public accommodations. (a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, or, directly or indirectly, to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status or that the patronage or custom of any person belonging to, purporting to be, or perceived to be, of any particular race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status is unwelcome, objectionable or not acceptable, desired or solicited.

> 13. Employer liability for discriminatory conduct by employee, agent or independent contractor. (c) An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

73. Upon information and belief, and as further set forth herein, Defendant APPLE INC had knowledge of John Doe's illegal actions and acquiesced to those actions through their manager.

74. Even if Defendants' Security Personnel are not employees of Defendant APPLE INC they are still liable for Defendants' Security Personnel's illegal actions as independent contractors.

75. Defendants' have violated these sections of the law as cited herein and set forth.

76. As a direct result of the foregoing, Plaintiffs have been significantly damaged.

## JURY DEMAND

77. Plaintiffs demand a jury trial

**WHEREFORE**, Plaintiffs demands judgment against Defendants in an amount which cannot be determined at this time and which should be determined by a jury of Plaintiffs' peers in order to provide recompense for the pain and suffering inflicted as detailed herein, along with punitive damages pursuant to 42 U.S.C. § 1981a(b)(1) and The Administrative Code of the City of New York, Human Rights Law § 8-502, together with costs, attorneys fees, interest and disbursements as and when permitted by law.

DATED:   New York, New York
July 26, 2011

Respectfully Submitted,

By: _____
William K. Phillips (WK-0409)
DEREK T SMITH LAW GROUP, P.C.

Jesse C. Rose, Of Counsel (JR-2409)

To: Thomas M. Crispi, Esq.
Schiff Hardin LLP
Attorneys for Defendants Apple Inc.

David Metzger, Esq.
Lewis Johns Avallone Aviles, LLP
Attorneys for Defendants OCI