**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------------X   **11-CV-3321 (JSR)**

BRIAN JOHNSTON and NILE CHARLES,

                           Plaintiffs,

      -against-

APPLE INC. & OMNISCIENT INVESTIGATION CORP.,

                           Defendants.
----------------------------------------------------------------------------X


## **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
## **TO DEFENDANT OMNISCIENT'S MOTION TO DISMISS**


 

DEREK T. SMITH LAW GROUP, P.C.
*Attorneys for Plaintiff*
30 Broad Street, 35th Floor
New York, New York 10004
(212) 587-0760


William K. Phillips, Esq. (wp0409)
Of Counsel

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 5

RELEVANT FACTS ..................................................................................................................... 6

LEGAL ARGUMENT .................................................................................................................... 7

I.  THE APPLICABLE STANDARD OF REVIEW ................................................................. 7

II. PLAINTIFFS' SECOND AMENDED COMPLAINT IS LEGALLY SUFFICIENT TO SUPPORT A CLAIM FOR INTERFERENCE WITH A PROPERTY RIGHT PURSUANT TO 42 U.S.C. § 1982 ................................................................................................................. 8

a.  Plaintiffs Are Members of a Racial Minority ........................................................ 8

b.  Defendant OMNISCIENT Intended to Discriminate Against Plaintiffs on the Basis of Their Race ................................................................................................................. 8

c.  The Discrimination Concerned The Purchase of Personal Property .................... 10

III. PLAINTIFFS' SECOND AMENDED COMPLAINT ADEQUATELY PLED A CLAIM FOR DISCRIMINATION PURSUANT TO NEW YORK STATE EXECUTIVE LAW §296(2)(a) ............................................................................................................................ 12

IV. PLAINTIFFS' SECOND AMENDED COMPLAINT ADEQUATELY PLEAD A CLAIM FOR DISCRIMINATION PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE §8-107 ......................................................................................................................... 13

V.  PLAINTIFFS ARE ENTITLED TO PUNITIVE DAMAGES ........................................... 15

CONCLUSION ............................................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

Bishop v. Toys "R" US-NY, LLC, 414 F.Supp.2d 385 (S.D.N.Y. 2006) ................................... 10
Bowling v. 220 W. 42nd St., LLC, 2011 NY Slip Op 31938 (2011) .......................................... 11
Bumpus v. New York City Transit Authority, 2008 WL 399147, 3 (N.Y.Sup. 2008)................. 13
Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302 at 4 (W.D.N.Y. 1999) .............................. 10
Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302, 4 (W.D.N.Y. 1999), ................................ 12
Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302, 4 (W.D.N.Y.,1999). ................................ 12
Colbert v. Furumoto Realty, Inc., 144 F.Supp.2d 251, 258 (S.D.N.Y.2001) ............................. 15
Diaz v. NBC Universal, Inc., 536 F.Supp.2d 337, 341 (S.D.N.Y. 2008) ..................................... 6
Dowrich v. Aramark Healthcare Support Servs., 2007 WL 2572122, at 8 [E.D.N.Y. 2007]) ....... 8
Drayton v. Toys "R' Us Inc., 645 F.Supp.2d 149 (S.D.N.Y.,2009)............................................ 11
Drayton v. Toys "R' Us Inc., 645 F.Supp.2d 149, 153-164 (S.D.N.Y. 2009) .............................. 8
Farrugia v. North Shore Hospital, 820 N.Y.S.2d 718, 2006.) .................................................... 13
Feacher v. Intercontinental Hotels Group, 563 F.Supp.2d 389, 402 (N.D.N.Y. 2008) ................ 8
Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985) ............................................................ 7
Greene v. Coach, Inc., 218 F. Supp.2d 404 (S.D.N.Y. 2002)..................................................... 15
Guzman v. City of New York, 2010 WL 4174622, 25 (E.D.N.Y. 2010 ..................................... 13
Harvey v. Nyrac, Inc., 813 F.Supp. 206, 209 [E.D.N.Y. 1993]) ................................................... 8
Jordan v. Bates Advertising Holdings, Inc., 11 Misc.3d 764, 770, 816 N.Y.S.2d 310,
    317 (N.Y.Sup. 2006)............................................................................................................... 13
Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) ...... 15
Kuper v. Empire Blue Cross & Blue Shield, 2003 WL 359462 (S.D.N.Y. 2003) ....................... 15
Loeffler v. Staten Island University Hosp., 582 F.3d 268, 278 (2d Cir. 2009) ........................... 14
Olzman v. Lake Hills Swim Club, Inc., 495 F.2d 1333 (2d Cir.1974)........................................ 10
Perry v. Burger King Corp.  924 F.Supp. 548, 552 (S.D.N.Y.,1996).......................................... 10
Phillips v. City of New York, 66 A.D.3d 170 (1st Dep't. 2009) .................................................. 13
Semper v. New York Methodist Hosp., 2011 WL 1240551, 3 (E.D.N.Y. 2011) ........................... 7
Shen v. A & P Food Stores, 1995 WL 728416 at 2-3 (E.D.N.Y. 1995)...................................... 10
Shen v. A&P Food Stores, 1995 WL 728416, 3 (E.D.N.Y.,1995) ........................................... 8, 9
Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) .................................. 14
State Div. of Human Rights on Complaint of Greene v. St. Elizabeth's Hosp., 66 N.Y.2d 684,
    687 (1985)............................................................................................................................... 11
Thompson v. American Eagle Airlines, Inc., 2000 WL 1505972, 11 (S.D.N.Y. 2000)............... 16
Tolbert v. Queens College, 242 F.3d 58, 77 (2d Cir.2001) ........................................................ 14
Totem Taxi v. N.Y. State Human Rights A. Bd., 65 N.Y.2d 300 (1985).................................... 11
Vig v. The New York Hairspray Co., 2009 Slip Op. 6466 (1st Dep't 2009) ............................... 13
Wal-Mart Stores East, L.P. v. New York State Div. of Human Rights, 71 A.D.3d 1452, 1453,
    897 N.Y.S.2d 348, 349-350 (4th Dept. 2010)........................................................................... 8
Wal-Mart Stores East, L.P. v. New York State Div. of Human Rights, 71 A.D.3d 1452, 1453,
    897 N.Y.S.2d 348, 349-350 (N.Y.A.D. 4 Dept.,2010) .......................................................... 11
Whitehurst v. 230 Fifth, Inc., 2011 WL 3163495, 2-3  (S.D.N.Y. 2011)...................................... 7
Williams v New York City Hous. Auth., 61 AD3d 62 (1st Dep't 2009) ..................................... 13
Young v. Suffolk County, 705 F.Supp.2d 183, 207 (E.D.N.Y.,2010).......................................... 7

Zimmerman v. Assoc. First Capital Corp., 251 F.3d 376 (2nd Cir. 2001) .................................... 15

**Statutes**

42 U.S.C. § 1982 ............................................................................................................................ 8
New York City Administrative Code §8-107 ............................................................................... 14
New York State Executive Law §296(2)(a) .................................................................................. 12

Plaintiffs, BRIAN JOHNSTON and NILE CHARLES ("JOHNSTON & CHARLES"), by and through their attorneys, DEREK T. SMITH LAW GROUP, P.C., respectfully submit this Memorandum of Law in Opposition to Defendant OMNISCIENT INVESTIGATION CORP. ("OMNISCIENT") Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs respectfully submit that Defendant OMNISCIENT's Motion to Dismiss pursuant to Rule 12(b)(6) must be denied in its entirety as a matter of law because Plaintiffs sufficiently pleaded facts that can be proven at trial to support their claims.

## PRELIMINARY STATEMENT

This is an action seeking damages to redress to redress the injuries Plaintiffs JOHNSTON & CHARLES have suffered as a result of being discriminated against by Defendant OMNISCIENT based on their race (African-American). Specifically, Defendant OMNISCIENT harassed and ejected Plaintiffs from the Apple store located at 1981 Broadway in New York City ("Broadway Store"), a place of public accommodation, based solely on their race. Defendant OMNISCIENT provides security personnel at the Broadway Store. Defendant OMNISCIENT made it clear that Plaintiffs were not welcome due to their race, as Defendant OMNISCIENT actually told Plaintiffs, "**before you say I'm racially discriminating against you, let me stop you. I am discriminating against you. I don't want 'your kind' hanging out in the store.**" Moreover, Defendant OMNISCIENT did not subject similarly situated Caucasian customers to the same harassment and ejection.

## RELEVANT FACTS

On or about December 9, 2010, Plaintiffs visited the Broadway Store to purchase personal property. Second Amended Complaint ("Complaint") ¶ 33. After Plaintiffs purchased headphones in the basement of the Broadway Store, both Plaintiffs proceeded upstairs, and were suddenly singled out and stopped by Defendant OMNISCIENT's Security Personnel, who said to them, "You know the deal. You know the deal." Complaint ¶¶ 38, 39, 42. Defendant OMNISCIENT's Security Personnel who approached them was a Caucasian male, in his 50's with salt and pepper hair, was about 6 feet and 2 inches tall, and weighed about 225 pounds. Complaint ¶ 41.

Defendant OMNISCIENT's Security Personnel then told Plaintiffs, **"Either you're here to see a Mac Specialist or to purchase something. If you are not doing either you have to leave the store. And before you say I'm racially discriminating against you, let me stop you. I am discriminating against you. I don't want 'your kind' hanging out in the store."** Complaint ¶¶ 43-44.

After Defendant OMNISCIENT's Security Personnel made the racist remark, a second employee of Defendant OMNISCIENT approached Plaintiffs, identified himself as the Head of Security, and told Plaintiffs, "Now you have to go. If you want to know why, it's because I said so. CONSIDER ME GOD. You have to go." Complaint ¶ 47.

Plaintiffs were still looking around the store for additional items to purchase and had no intention of leaving at that point in time. As such, Plaintiffs asked to speak to a manager to file a complaint. Complaint ¶ 48. Defendant OMNISCIENT's Head of Security told Plaintiffs that there was no complaint to be made and walked away from Plaintiffs, deliberately ignoring their request to see a manager. Plaintiffs searched the retail store and ultimately found a manager who, upon information and belief, works exclusively for Defendant APPLE. Complaint ¶ 48-49.

6

Plaintiffs complained to Defendant APPLE's Manager about Defendant OMNISCIENT's racial profiling and pointed out that none of the Caucasian customers were being approached by Defendant OMNISCIENT's Security Personnel or asked to leave. Complaint ¶ 51.  Despite this complaint, Plaintiffs were still required to leave the premises by Defendant APPLE's employee and Defendant OMNISCIENT's Security Personnel. Complaint ¶ 55.

Further, at no point was there any accusation made against Plaintiffs that they had done anything improper.  In direct contrast, Plaintiffs were merely present in the store in the same manner as other, non-Black customers and confronted by Defendant OMNISCIENT and told that they had to leave and that they were being discriminated against. Complaint ¶ 52.

## LEGAL ARGUMENT

### I.  THE APPLICABLE STANDARD OF REVIEW

Federal Rules of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief can be granted.  The standard of review on a motion to dismiss is heavily weighted in favor of the Plaintiff. Diaz v. NBC Universal, Inc., 536 F.Supp.2d 337, 341 (S.D.N.Y. 2008).

"A court considering a 12(b)(6) motion must take factual allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor.  A complaint need not contain detailed factual allegations, but it must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Semper v. New York Methodist Hosp., 2011 WL 1240551, 3 (E.D.N.Y. 2011) (internal citations and quotation marks omitted); See Whitehurst v. 230 Fifth, Inc., 2011 WL 3163495, 2-3  (S.D.N.Y. 2011)("In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the

complaint as true, and draw all reasonable inferences in favor of the plaintiff"). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

## II. PLAINTIFFS' SECOND AMENDED COMPLAINT IS LEGALLY SUFFICIENT TO SUPPORT A CLAIM FOR INTERFERENCE WITH A PROPERTY RIGHT PURSUANT TO 42 U.S.C. § 1982

Section 1982 provides that, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To state a claim under §1982, Plaintiffs must allege facts in support of the following elements: (1) they are members of a racial minority; (2) defendants intended to discriminate on the basis of their race; (3) the discrimination concerned one or more activities enumerated in §1982, such as the purchase of personal property. Young v. Suffolk County, 705 F.Supp.2d 183, 207 (E.D.N.Y.,2010).

### a. Plaintiffs Are Members of a Racial Minority

Concerning the first element, Plaintiffs are members of a racial minority (African-American).

### b. Defendant OMNISCIENT Intended to Discriminate Against Plaintiffs on the Basis of Their Race

With regard to the second element, Plaintiffs must allege that Defendants' actions were purposefully discriminatory and racially motivated, Shen v. A&P Food Stores, 1995 WL 728416, 3 (E.D.N.Y.,1995), and may "rely on direct or circumstantial evidence" to demonstrate purposeful discrimination. Id. at 3. "Moreover, Plaintiffs may establish that they were subject to

racial discrimination through any evidence logically supporting an inference of that intent." Id. at 3 (quoting Harvey v. Nyrac, Inc., 813 F.Supp. 206, 209 [E.D.N.Y. 1993]).

One method by which Plaintiffs can establish a prima facie case of discrimination is to show that they were treated differently than similarly situated individuals of another race. Feacher v. Intercontinental Hotels Group, 563 F.Supp.2d 389, 402 (N.D.N.Y. 2008); *See* Drayton v. Toys "R' Us Inc., 645 F.Supp.2d 149, 153-164 (S.D.N.Y. 2009)(quoting Dowrich v. Aramark Healthcare Support Servs., 2007 WL 2572122, at 8 [E.D.N.Y. 2007])(an "inference of discrimination arises when [an] individual of one race [is] treated less favorably than those of another race who are similarly situated"); Wal-Mart Stores East, L.P. v. New York State Div. of Human Rights, 71 A.D.3d 1452, 1453, 897 N.Y.S.2d 348, 349-350 (4th Dept. 2010)("By "establishing that [an employee of Defendant] stopped greeting customers and asked the [Plaintiff] for a receipt when she left the store but that he did not ask Caucasian customers for receipts, . . . the [Plaintiff] met her burden of demonstrating unlawful discrimination by the employee").

Here, Plaintiffs were lawfully present inside the Broadway Store for the sole purpose of purchasing personal property, when they were suddenly singled out and stopped by Defendant OMNISCIENT's Security Personnel, who said to them, "Either you're here to see a Mac Specialist or to purchase something.  If you are not doing either you have to leave the store **. . . And before you say I'm racially discriminating against you, let me stop you.  I am discriminating against you.  I don't want 'your kind' hanging out in the store."** Complaint ¶¶ 43-44.

After Defendant OMNISCIENT's Security Personnel made the racist remark, Defendant OMNISCIENT's Head of Security approached Plaintiffs and told them, **"Now you have to go.  If**

9

**you want to know why, it's because I said so.  CONSIDER ME GOD.  You have to go."** Complaint ¶ 47.

Plaintiffs then complained to Defendant APPLE's Manager about Defendant OMNISCIENT's racial profiling and even pointed out that none of the Caucasian customers were being approached or asked to leave. Complaint ¶ 51.  Despite this complaint, Plaintiffs were still required to leave the premises by Defendant APPLE's employee and Defendant OMNISCIENT's Security Personnel. Complaint ¶ 55.

At no point was there any accusation made against Plaintiffs that they had done anything improper.  In direct contrast, Plaintiffs were merely present in the store in the same manner as other, non-Black customers and confronted by Defendants and told that they had to leave and that they were being discriminated against. Complaint ¶ 52.  Plaintiffs were treated differently than similarly situated Caucasian customers.  Caucasian customers in the immediate vicinity to Plaintiffs were not harassed by any security, nor were they told that they must leave.  Defendant OMNISCIENT didn't harass and/or eject any Caucasian customers from the Broadway Store with no explanation beyond being told, "**I don't want 'your kind' hanging out in the store.**"

Furthermore, "the doctrine of *respondeat superior* applies to claims where management-level employees are implicated." Shen v. A&P Food Stores, 1995 WL 728416, 3 (E.D.N.Y.,1995)(emphasis in original).  Since Defendant OMNISCIENT's Head of Security was obviously a managerial-level employee, the doctrine of respondeat superior most definitely applies to Defendant OMNISCIENT concerning Plaintiffs' Section 1982 claim.

### c. The Discrimination Concerned The Purchase of Personal Property

With respect to the third element, "[s]ection 1982 has been interpreted to include a somewhat broad definition of 'property.'" Perry v. Burger King Corp. 924 F.Supp. 548,

552 (S.D.N.Y.,1996). In Olzman v. Lake Hills Swim Club, Inc., 495 F.2d 1333 (2d Cir.1974), the court held that it was "reasonable to characterize the freedom of blacks to come and go . . . as sufficiently pertaining to a condition of property to be a right capable of being held under § 1982." Id. at 1339; *See* Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302 at 4 (W.D.N.Y. 1999) (claim stated under Section 1982 where cashier refused to complete sale and had plaintiff escorted from store); Shen v. A & P Food Stores, 1995 WL 728416 at 2-3 (E.D.N.Y. 1995) (claim stated under section 1982 where employees refused to sell apple juice to plaintiffs).

Lastly, Defendants incorrectly rely on Bishop v. Toys "R" US-NY, LLC, 414 F.Supp.2d 385 (S.D.N.Y. 2006) in support of their argument that Plaintiffs' Second Amended Complaint fails to allege any interference with a property right. In Bishop, a store security guard stopped the plaintiff and demanded that he present a receipt as he was exiting the store. When the plaintiff declined to do so, he was detained by security personnel and was not allowed to leave until he presented his sales receipt. Id. The Court found that the actions of store personnel did not violate § 1982 because "it is doubtful that plaintiff could claim any interest in the 'property' of the store" since the plaintiff "was not denied access to the store." Id. at 395. In fact, the security personnel in Bishop were actually doing the opposite of Defendant OMNISCIENT – they were preventing the plaintiff from leaving the store, not denying him access to the store.

This is very different from the case at hand, where Defendant OMNISCIENT prevented Plaintiffs from continuing to shop at the Broadway Store. Here, at the time Plaintiffs were ordered to leave the store, Plaintiffs were still looking around the store and had no intention of leaving at that point in time. Thus, Defendant OMNISCIENT clearly interfered with Plaintiffs' right to purchase personal property because of their race by removing them from the location where the personal property could be purchased.

### III. PLAINTIFFS' SECOND AMENDED COMPLAINT ADEQUATELY PLED A CLAIM FOR DISCRIMINATION PURSUANT TO NEW YORK STATE EXECUTIVE LAW §296(2)(a)

A claim of discrimination pursuant to New York State Human Rights Law ("NYSHRL") section prohibiting racial discrimination in places of public accommodation is subject to the same analysis as claim of discrimination under federal law. See Drayton v. Toys "R' Us Inc., 645 F.Supp.2d 149 (S.D.N.Y.,2009).

While it is true that an employer cannot be held liable for an employee's discriminatory acts unless the employer became a part to the act by encouraging, condoning or approving it, Totem Taxi v. N.Y. State Human Rights A. Bd., 65 N.Y.2d 300 (1985), *"an employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation."* Wal-Mart Stores East, L.P. v. New York State Div. of Human Rights, 71 A.D.3d 1452, 1453, 897 N.Y.S.2d 348, 349-350 (N.Y.A.D. 4 Dept.,2010) (internal citations and quotation marks omitted)(emphasis added); *See also* Bowling v. 220 W. 42nd St., LLC, 2011 NY Slip Op 31938 (2011) (holding "[i]f an employer fails even to discipline an employee in response to that employee's discriminatory conduct, the employer may be found to have condoned such improper conduct"); State Div. of Human Rights on Complaint of Greene v. St. Elizabeth's Hosp., 66 N.Y.2d 684, 687 (1985) ("Condonation, which may sufficiently implicate an employer in the discriminatory acts of its employee to constitute a basis for employer liability under the Human Rights Law, contemplates a knowing, after-the-fact forgiveness or acceptance of an offense.").

In the Wal-Mart case, the court found that the employer condoned the discriminatory acts of its employee against a customer by failing to discipline the employee for such acts. Wal-Mart,

12

71 A.D.3d at 1453.  This is almost identical to our case, where Plaintiffs brought the discrimination to the attention of Defendant OMNISCIENT's Head of Security, who did absolutely nothing in response, and instead, further participated in the discrimination by helping to escort Plaintiffs out of the store.

In addition, as the court stated in Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302, 4 (W.D.N.Y. 1999), "the instant circumstances differ substantially from those in Totem Taxi in that [the employee] was not simply one of multitudinous cabbies for whose racist behavior the employer took immediate and public responsibility, but rather, given that [the employee] was the only Manager present at the time and that no statement, explanation, or apology regarding this incident has been issued by Defendant, it is impossible to discern from the facts alleged whether she acted out of personal animosity against African-Americans or pursuant to a discriminatory company-wide policy or practice.  Given Doe's alleged authority and actions, the state law claim will not be dismissed at this time." Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302, 4 (W.D.N.Y.,1999).

Defendant OMNISCIENT's Head of Security not only condoned the discrimination by Defendant OMNISCIENT's Security Personnel, but also participated in the discrimination by removing Plaintiffs from the store due to racial animus.  As such, Defendant OMNISCIENT is liable for the race-based discrimination under the NYSHRL.

IV. **PLAINTIFFS' SECOND AMENDED COMPLAINT ADEQUATELY PLEAD A CLAIM FOR DISCRIMINATION PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE §8-107**

New York City's 2005 Local Civil Rights Restoration Act amended the New York City Human Rights Law so that its construction would be more expansive and remedial than, and

independent of, its federal and state counterparts. "The New York City Human Rights Law was intended to be more protective than the state and federal counterpart." Williams v New York City Hous. Auth., 61 AD3d 62 (1st Dep't 2009) (quoting Farrugia v. North Shore Hospital, 820 N.Y.S.2d 718, 2006.)

In fact, "[t]he legislative history contemplates that the Law be independently construed with the aim of making it the most progressive in the nation." Bumpus v. New York City Transit Authority, 2008 WL 399147, 3 (N.Y.Sup. 2008). "[I]n enacting the more protective Human Rights Law, the New York City Council has exercised a clear policy choice which this Court is bound to honor [. . .]. Thus, the case law that has developed in interpreting both the [state and federal anti-discrimination statutes] should merely serve as a base for the New York City Human Rights Law, not its ceiling." Jordan v. Bates Advertising Holdings, Inc., 11 Misc.3d 764, 770, 816 N.Y.S.2d 310, 317 (N.Y.Sup. 2006). *See also* Guzman v. City of New York, 2010 WL 4174622, 25 (E.D.N.Y. 2010)(internal citations and quotations omitted)("courts have recently determined that claims under NYCHRL require an independent liberal construction and are no longer co-extensive with its federal counterparts."); *See also* Phillips v. City of New York, 66 A.D.3d 170 (1st Dep't. 2009); Vig v. The New York Hairspray Co., 2009 Slip Op. 6466 (1st Dep't 2009).

Moreover, the Second Circuit has completely endorsed the holdings of the aforementioned cases. *See,* Loeffler v. Staten Island University Hosp., 582 F.3d 268, 278 (2d Cir. 2009)(internal citations and quotation marks omitted)(emhasis in original)(The Restoration Act "amended the City HRL in a variety of ways, including by confirming the legislative intent to abolish 'parallelism' between the City HRL and federal and state anti–discrimination law: The provisions of this [ ] title shall be construed liberally for the accomplishment of the uniquely

14

broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably–worded to provisions of this title, have been so construed. *There is now a one–way ratchet*: Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights law cannot fall").

In light of the Restoration Act, the pleading standard under the New York City Human Rights Law is more expansive than federal or state law. Under this more lenient and remedial standard, Plaintiffs have cleared their pleading burden by an even greater margin.

## V.     PLAINTIFFS ARE ENTITLED TO PUNITIVE DAMAGES

Punitive damages have been awarded in a variety of discrimination cases based on the general reprehensible nature of the discriminatory conduct. "Punitive damages may be awarded for a civil rights claim if 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves *reckless or callous indifference to the federally protected rights of others.*'" Tolbert v. Queens College, 242 F.3d 58, 77 (2d Cir.2001) (quoting Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)) (emphasis in original); *See also,* Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (holding that "the terms 'malice' and 'reckless' ultimately focus on the actor's state of mind," making a showing of egregious or outrageous discrimination unnecessary); Kuper v. Empire Blue Cross & Blue Shield, 2003 WL 359462 (S.D.N.Y. 2003) (denying employer's motion for judgment as a matter of law as to punitive damages award where employer had written antidiscrimination policy but did not present evidence that it actively trained employees or enforced the policy);

Greene v. Coach, Inc., 218 F. Supp.2d 404 (S.D.N.Y. 2002) (denying employer's motion to dismiss punitive damage claim even though the employer had a written antidiscrimination policy and conducted numerous training programs because it failed to provide evidence that managers at issue had undergone training); Zimmerman v. Assoc. First Capital Corp., 251 F.3d 376 (2nd Cir. 2001) (punitive damage issue was properly submitted to the jury even though supervisor accused of discrimination testified that he received training in "equal opportunity" because such testimony did not prove the existence of an anti-discrimination policy, and the employer presented no evidence of implementation or enforcement of any such policy).

**As the court in Colbert v. Furumoto Realty, Inc., 144 F.Supp.2d 251, 258 (S.D.N.Y.2001) stated, "we fail to see how racial discrimination is not sufficiently reprehensible to warrant a punitive damages award."**

Lastly, under the NYCHRL, there is no absolute defense to punitive damages. Rather, the NYCHRL sets out a set of criteria which "shall be considered in mitigation of the amount of . . . punitive damages which may be imposed . . . ." 8–107(13)(e). As the Thompson court observed, "In view of the explicit language that these factors are only to be considered as factors in mitigating punitive damages, **they are not a complete defense sufficient to strike the claim for punitive damages** [. . .]. Thompson v. American Eagle Airlines, Inc., 2000 WL 1505972, 11 (S.D.N.Y. 2000) (emphasis added).

As Plaintiffs alleged, the actions and conduct of Defendant OMNISCIENT's Security Personnel were intentional and intended to harm Plaintiffs. Defendant OMNISCIENT's Security Personnel acted with racial animus and intentionally discriminated against Plaintiffs, Complaint ¶¶57-58, making an award of punitive damages appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant OMNISCIENT's Motion to Dismiss in its entirety, and order such other and further relief as this Court may deem just and proper.

Dated: New York, New York
August 18, 2011

                                  **DEREK T. SMITH LAW GROUP, P.C.**
                                  *Attorneys for Plaintiff*

By: _____/s/_____
William K. Phillips, Esq. (wp0409)
Of Counsel
30 Broad Street, 35th Floor
New York, New York 10004
(212) 587-0760

To:    Thomas M. Crispi, Esq.
Kellen G. Ressmeyer, Esq.
SCHIFF HARDIN LLP
*Attorneys for Apple Inc.*
666 Fifth Avenue, 17th Floor
New York, NY 10103
212-753-5000

David L. Metzger, Esq.
LEWIS JOHS AVALLONE AVILES, LLP
*Attorneys for Omniscient Investigation Corp.*
61 Broadway, Suite 2000
New York, NY 10006
212-233-7195