**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X          **11-CV-3321 (JSR)**

BRIAN JOHNSTON and NILE CHARLES,

                                   Plaintiffs,

              -against-

APPLE INC. & OMNISCIENT INVESTIGATION CORP.,

                                   Defendants.

------------------------------------------------------------------------X

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT APPLE'S MOTION TO DISMISS

DEREK T. SMITH LAW GROUP, P.C.
*Attorneys for Plaintiff*
30 Broad Street, 35th Floor
New York, New York 10004
(212) 587-0760

William K. Phillips, Esq. (wp0409)
Of Counsel

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................. 5

RELEVANT FACTS .......................................................................................... 6

LEGAL ARGUMENT......................................................................................... 7

I.    THE APPLICABLE STANDARD OF REVIEW .............................................. 7

II.   PLAINTIFFS' SECOND AMENDED COMPLAINT IS LEGALLY SUFFICIENT TO
      SUPPORT A CLAIM FOR INTERFERENCE WITH A PROPERTY RIGHT PURSUANT
      TO 42 U.S.C. § 1982 ............................................................................ 8

a.    Plaintiffs Are Members of a Racial Minority ...................................... 9

b.    Defendant APPLE Intended to Discriminate Against Plaintiffs on the Basis of Their Race . 9

c.    The Discrimination Concerned The Purchase of Personal Property .................................. 11

III.  PLAINTIFFS' SECOND AMENDED COMPLAINT ADEQUATELY PLED A CLAIM
      FOR DISCRIMINATION PURSUANT TO NEW YORK STATE EXECUTIVE LAW
      §296(2)(a) ....................................................................................... 12

IV.   PLAINTIFFS' SECOND AMENDED COMPLAINT ADEQUATELY PLEAD A CLAIM
      FOR DISCRIMINATION PURSUANT TO NEW YORK CITY ADMINISTRATIVE
      CODE §8-107 .................................................................................... 14

V.    DEFENDANT APPLE, AS A JOINT EMPLOYER, IS LIABLE FOR THE ACTS OF
      DEFENDANT OMNISCIENT'S SECURITY PERSONNEL............................................ 15

VI.   PLAINTIFFS ARE ENTITLED TO PUNITIVE DAMAGES ........................................ 18

CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

Bishop v. Best Buy, Co. Inc., 2010 WL 4159566 (S.D.N.Y. 2010)...............................................11

Bishop v. Toys "R" US-NY, LLC, 414 F.Supp.2d 385 (S.D.N.Y. 2006) ....................................11

Bowling v. 220 W. 42nd St., LLC, 2011 NY Slip Op 31938 (2011) ...........................................12

Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2nd Cir. 1988) ...........................................16

Bumpus v. New York City Transit Authority, 2008 WL 399147, 3 (N.Y.Sup. 2008)................14

Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302 at 4 (W.D.N.Y. 1999) ..............................11

Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302, 4 (W.D.N.Y. 1999) ................................13

Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302, 4 (W.D.N.Y.,1999)..................................13

Clinton's Ditch Co-op Co., Inc. v. NLRB, 778 F.2d 132, 136 (2d Cir. 1985)............................16

Colbert v. Furumoto Realty, Inc., 144 F.Supp.2d 251, 258 (S.D.N.Y.2001) .............................19

Dias v. Community Action Project, Inc., 2009 U.S. Dist. LEXIS 17562, 2009 WL 595601, at *6
    (E.D.N.Y. Mar. 6, 2009) ..........................................................................................................16

Diaz v. NBC Universal, Inc., 536 F.Supp.2d 337, 341 (S.D.N.Y. 2008) .....................................8

Dowrich v. Aramark Healthcare Support Servs., 2007 WL 2572122, at 8 [E.D.N.Y. 2007].........9

Drayton v. Toys "R' Us Inc., 645 F.Supp.2d 149 (S.D.N.Y.,2009).............................................12

Drayton v. Toys "R' Us Inc., 645 F.Supp.2d 149, 153-164 (S.D.N.Y. 2009) ...............................9

Farrugia v. North Shore Hospital, 820 N.Y.S.2d 718, 2006.) ....................................................14

Feacher v. Intercontinental Hotels Group, 563 F.Supp.2d 389, 402 (N.D.N.Y. 2008) .................9

Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009)................................16

Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985) .............................................................8

Greene v. Coach, Inc., 218 F. Supp.2d 404 (S.D.N.Y. 2002).....................................................19

Guzman v. City of New York, 2010 WL 4174622, 25 (E.D.N.Y. 2010) .....................................14

Halpert v. Manhattan Apartments, Inc., 580 F.3d 86 (2d Cir. 2009)...........................................18

Harvey v. Nyrac, Inc., 813 F.Supp. 206, 209 [E.D.N.Y. 1993]....................................................9

Jordan v. Bates Advertising Holdings, Inc., 11 Misc.3d 764, 770, 816 N.Y.S.2d 310,
    317 (N.Y.Sup. 2006).................................................................................................................14

Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) ......18

Kuper v. Empire Blue Cross & Blue Shield, 2003 WL 359462 (S.D.N.Y. 2003) .......................18

Lihli Fashions Corp. v. NRLB, 80 F.3d 743, 747 (2d Cir. 1996).................................................16

Loeffler v. Staten Island University Hosp., 582 F.3d 268, 278 (2d Cir. 2009) ............................15

Murray v. Miner, 74 F.3d 402, 404 (2nd Cir. 1996) ....................................................................16

Niland v. Buffalo Laborers Welfare Fund, 2007 U.S. Dist. LEXIS 77567, 2007 WL 3047099, at
    *6 (W.D.N.Y. Oct. 18, 2007).....................................................................................................16

Olzman v. Lake Hills Swim Club, Inc., 495 F.2d 1333 (2d Cir.1974)........................................11

Perry v. Burger King Corp.  924 F.Supp. 548, 552 (S.D.N.Y.,1996)..........................................11

Phillips v. City of New York, 66 A.D.3d 170 (1st Dep't. 2009)..................................................14

Robinson v. Overseas Military Sales, 21 F.3rd 502 (2d Cir. 1994)..............................................18

Semper v. New York Methodist Hosp., 2011 WL 1240551, 3 (E.D.N.Y. 2011).........................8

Shen v. A & P Food Stores, 1995 WL 728416 at 2-3 (E.D.N.Y. 1995).....................................11

Shen v. A&P Food Stores, 1995 WL 728416, 3 (E.D.N.Y.,1995) .........................................9, 10

Smith v. United States Army Corps of Eng'rs, 2011 U.S. Dist. LEXIS 54879, 10-11 (W.D.N.Y.
    May 20, 2011)...........................................................................................................................16

Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) ................................... 18

State Div. of Human Rights on Complaint of Greene v. St. Elizabeth's Hosp., 66 N.Y.2d 684, 687 (1985)........................................................................................................................ 13

Thompson v. American Eagle Airlines, Inc., 2000 WL 1505972, 11 (S.D.N.Y. 2000).............. 19

Tolbert v. Queens College, 242 F.3d 58, 77 (2d Cir.2001) ......................................................... 18

Totem Taxi v. N.Y. State Human Rights A. Bd., 65 N.Y.2d 300 (1985).................................... 12

Vig v. The New York Hairspray Co., 2009 Slip Op. 6466 (1st Dep't 2009) .............................. 14

Wal-Mart Stores East, L.P. v. New York State Div. of Human Rights, 71 A.D.3d 1452, 1453, 897 N.Y.S.2d 348, 349-350 (4th Dept. 2010)............................................................................ 9

Wal-Mart Stores East, L.P. v. New York State Div. of Human Rights, 71 A.D.3d 1452, 1453, 897 N.Y.S.2d 348, 349-350 (N.Y.A.D. 4 Dept.,2010) .............................................................. 12

Whitehurst v. 230 Fifth, Inc., 2011 WL 3163495, 2-3  (S.D.N.Y. 2011)...................................... 8

Williams v New York City Hous. Auth., 61 AD3d 62 (1st Dep't 2009) ..................................... 14

Young v. Suffolk County, 705 F.Supp.2d 183, 207 (E.D.N.Y.,2010).......................................... 8

Zimmerman v. Assoc. First Capital Corp., 251 F.3d 376 (2nd Cir. 2001) ................................... 19

**Statutes**

42 U.S.C. § 1982.............................................................................................................................. 8

NEW YORK CITY ADMINISTRATIVE CODE §8-107 ........................................................... 14

NEW YORK STATE EXECUTIVE LAW §296(2)(a) ............................................................... 12

Plaintiffs, BRIAN JOHNSTON and NILE CHARLES ("JOHNSTON & CHARLES"), by and through their attorneys, DEREK T. SMITH LAW GROUP, P.C., respectfully submit this Memorandum of Law in Opposition to Defendant APPLE INC.'s ("APPLE") Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6) and 12(d) of the Federal Rules of Civil Procedure.  Plaintiffs respectfully submit that Defendant APPLE's Motion to Dismiss must be denied in its entirety as a matter of law because Plaintiffs sufficiently pleaded facts that can be proven at trial to support their claims.

## PRELIMINARY STATEMENT

This is an action seeking damages to redress to redress the injuries Plaintiffs JOHNSTON & CHARLES have suffered as a result of being discriminated against by Defendant APPLE based on their race (African-American).  Specifically, Defendant APPLE ejected Plaintiffs from the Apple store located at 1981 Broadway in New York City ("Broadway Store"), a place of public accommodation, based solely on their race.

Defendant APPLE made it clear that Plaintiffs were not welcome due to their race and cannot evade liability for actions which took place in their store, by their own employees and other individuals hired by APPLE and unbeknownst to the public labeled as "Independent Contractors." **To be clear, immediately after Plaintiffs complained to Defendant APPLE's Manager that Defendant OMNISCIENT[1] was discriminating against them on the basis of their race, rather than correct or investigate the discrimination,  Defendant APPLE's Manager actually asked Defendant OMNISCIENT's Head of Security to call 911 on Plaintiffs.**  Defendant APPLE's Manager obviously did this in furtherance of the discriminatory acts being committed by Defendant

---

[1] Defendant OMNISCIENT INVESTIGATION CORP. ("OMNISCIENT") provides security personnel at the Broadway Store.  However, there is nothing to identify them as OMNISCIENT employees and not APPLE employees.

OMNISCIENT.  Then, at the direction of Defendant APPLE's Manager, Plaintiffs were escorted off the premises by an employee of Defendant APPLE and Defendant OMNISCIENT's Security Personnel.  Moreover, Defendant APPLE did not subject similarly situated Caucasian customers to the same harassment and ejection.

## RELEVANT FACTS

On or about December 9, 2010, Plaintiffs visited the Broadway Store to purchase personal property. Second Amended Complaint ("Complaint") ¶ 33.  After Plaintiffs purchased headphones in the basement of the Broadway Store, both Plaintiffs proceeded upstairs, and were suddenly singled out and stopped by Defendant OMNISCIENT's Security Personnel, who said to them, "Either you're here to see a Mac Specialist or to purchase something.  If you are not doing either you have to leave the store.  **And before you say I'm racially discriminating against you, let me stop you.  I am discriminating against you.  I don't want 'your kind' hanging out in the store."** Complaint ¶¶ 43-44.  Defendant OMNISCIENT's Security Personnel, do not wear any identification labeling them as an entity separate and apart from APPLE and are assumed by the public to be employees of APPLE.

After Defendant OMNISCIENT's Security Personnel made the racist remark, a second employee of Defendant OMNISCIENT approached Plaintiffs, identified himself as the Head of Security, and told Plaintiffs, "Now you have to go.  If you want to know why, it's because I said so. CONSIDER ME GOD.  You have to go." Complaint ¶ 47.

Plaintiffs were still looking around the store for additional items to purchase and had no intention of leaving at that point in time.  **As such, Plaintiffs asked to speak to Defendant APPLE's manager to file a complaint of discrimination, and ultimately found a manager of Defendant APPLE.** Complaint ¶ 48-49.  However, before Plaintiffs could explain their situation to

Defendant APPLE's Manager, Defendant OMNISCIENT's Head of Security interjected and said, "I asked them if they needed a specialist."  Due to this interjection and the perceived submission to Defendant APPLE's Manager, it was apparent that Defendant OMNISCIENT's Security Personnel were subordinate to Defendant APPLE's Manager. <u>Complaint ¶ 49-50.</u>

**<u>Plaintiffs complained to Defendant APPLE's Manager about Defendant OMNISCIENT's racial profiling and pointed out that none of the Caucasian customers were being approached or asked to leave. Complaint ¶ 51.  Shockingly, in order to further harass, degrade, humiliate, and discriminate against Plaintiffs, Defendant APPLE's Manager asked Defendant OMNISCIENT's Head of Security to call 911</u>**. <u>Complaint ¶ 53</u>.  Defendant APPLE's Manager obviously did this in furtherance of the discriminatory acts being committed by Defendant OMNISCIENT's Security Personnel, as Plaintiffs had just complained to him of discrimination. Complaint ¶ 54.  <u>At the direction of Defendant APPLE's Manager, Plaintiffs were then required to leave the premises, and were escorted by Defendant APPLE's employee and Defendant OMNISCIENT's Security Personnel</u>. Complaint ¶ 55.

Further, at no point was there any accusation made against Plaintiffs that they had done anything improper.  In direct contrast, Plaintiffs were merely present in the Broadway Store in the same manner as other, non-Black customers and were confronted by Defendants and told that they had to leave and that they were being discriminated against. <u>Complaint ¶ 52.</u>

## <u>LEGAL ARGUMENT</u>

## I.    <u>THE APPLICABLE STANDARD OF REVIEW</u>

Federal Rules of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief can be granted.  The standard of review on a motion to dismiss

is heavily weighted in favor of the Plaintiff. <u>Diaz v. NBC Universal, Inc.</u>, 536 F.Supp.2d 337, 341 (S.D.N.Y. 2008).

"A court considering a 12(b)(6) motion must take factual allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor.  A complaint need not contain detailed factual allegations, but it must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Semper v. New York Methodist Hosp.</u>, 2011 WL 1240551, 3 (E.D.N.Y. 2011) (internal citations and quotation marks omitted); *See* <u>Whitehurst v. 230 Fifth, Inc.</u>, 2011 WL 3163495, 2-3  (S.D.N.Y. 2011)("In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff").  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985).


II.    **PLAINTIFFS' SECOND AMENDED COMPLAINT IS LEGALLY SUFFICIENT TO SUPPORT A CLAIM FOR INTERFERENCE WITH A PROPERTY RIGHT PURSUANT TO 42 U.S.C. § 1982**

Section 1982 provides that, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." <u>42 U.S.C. § 1982.</u>  To state a claim under §1982, Plaintiffs must allege facts in support of the following elements: (1) they are members of a racial minority; (2) defendants intended to discriminate on the basis of their race; (3) the discrimination concerned one or more activities enumerated in §1982, such as the purchase and lease of property. <u>Young v. Suffolk County</u>, 705 F.Supp.2d 183, 207 (E.D.N.Y.,2010).

### a.      Plaintiffs Are Members of a Racial Minority

Concerning the first element, Defendants do not dispute that Plaintiffs are members of a racial minority (African-American).

### b.      Defendant APPLE Intended to Discriminate Against Plaintiffs on the Basis of Their Race

With regard to the second element, Plaintiffs must allege that Defendants' actions were purposefully discriminatory and racially motivated, Shen v. A&P Food Stores, 1995 WL 728416, 3 (E.D.N.Y.,1995), and may "rely on direct or circumstantial evidence" to demonstrate purposeful discrimination. Id. at 3.  "Moreover, Plaintiffs may establish that they were subject to racial discrimination through any evidence logically supporting an inference of that intent." Id. at 3 (quoting Harvey v. Nyrac, Inc., 813 F.Supp. 206, 209 [E.D.N.Y. 1993]).

One method by which Plaintiffs can establish a prima facie case of discrimination is to show that they were treated differently than similarly situated individuals of another race. Feacher v. Intercontinental Hotels Group, 563 F.Supp.2d 389, 402 (N.D.N.Y. 2008); *See* Drayton v. Toys "R' Us Inc., 645 F.Supp.2d 149, 153-164 (S.D.N.Y. 2009)(quoting Dowrich v. Aramark Healthcare Support Servs., 2007 WL 2572122, at 8 [E.D.N.Y. 2007])(an "inference of discrimination arises when [an] individual of one race [is] treated less favorably than those of another race who are similarly situated"); Wal-Mart Stores East, L.P. v. New York State Div. of Human Rights, 71 A.D.3d 1452, 1453, 897 N.Y.S.2d 348, 349-350 (4th Dept. 2010)("By "establishing that [an employee of Defendant] stopped greeting customers and asked the [Plaintiff] for a receipt when she left the store but that he did not ask Caucasian customers for receipts, . . . the [Plaintiff] met her burden of demonstrating unlawful discrimination by the employee").

Here, Plaintiffs were lawfully present inside the Broadway Store for the sole purpose of purchasing personal property, when they were suddenly singled out and stopped by Defendant OMNISCIENT's Security Personnel, who told them to leave the store and even said, **"before you say I'm racially discriminating against you, let me stop you.   I am discriminating against you.   I don't want 'your kind' hanging out in the store."**

As a result of this blatantly racist remark, <u>Plaintiffs immediately complained to Defendant APPLE's Manager</u> about Defendant OMNISCIENT's racial profiling and even pointed out that none of the Caucasian customers were being approached or asked to leave.   Plaintiffs complained that they were being treated differently than similarly situated Caucasian customers.   Caucasian customers in the immediate vicinity to Plaintiffs were not harassed by any security, nor were they told that they must leave.

**However, Defendant APPLE's Manager did absolutely nothing in response to Plaintiffs' complaint of discrimination, and instead further harassed, degraded, humiliated, and discriminated against Plaintiffs, by asking Defendant OMNISCIENT's Head of Security to call 911**.   Defendant APPLE's Manager obviously did this in furtherance of the discriminatory acts being committed by Defendant OMNISCIENT's Security Personnel, as Plaintiffs had just complained to him of discrimination.   At the direction of Defendant APPLE's Manager, Plaintiffs were then required to leave the premises, and were escorted by Defendant APPLE's employee and Defendant OMNISCIENT's Security Personnel.

Furthermore, "the doctrine of *respondeat superior* applies to claims where management-level employees are implicated." <u>Shen v. A&P Food Stores</u>, 1995 WL 728416, 3 (E.D.N.Y.,1995)(emphasis in original).   Since Defendant APPLE's Manager was obviously a managerial-level employee, the doctrine of respondeat superior most definitely applies to Defendant

APPLE concerning Plaintiffs' Section 1982 claim.

### c.  The Discrimination Concerned The Purchase of Personal Property

With respect to the third element, "[s]ection 1982 has been interpreted to include a somewhat broad definition of 'property.'" Perry v. Burger King Corp. 924 F.Supp. 548, 552 (S.D.N.Y.,1996). In Olzman v. Lake Hills Swim Club, Inc., 495 F.2d 1333 (2d Cir.1974), the court held that it was "reasonable to characterize the freedom of blacks to come and go . . . as sufficiently pertaining to a condition of property to be a right capable of being held under § 1982." Id. at 1339; See Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302 at 4 (W.D.N.Y. 1999) (claim stated under Section 1982 where cashier refused to complete sale and had plaintiff escorted from store); Shen v. A & P Food Stores, 1995 WL 728416 at 2-3 (E.D.N.Y. 1995) (claim stated under section 1982 where employees refused to sell apple juice to plaintiffs).

Lastly, Defendants incorrectly rely on Bishop v. Best Buy, Co. Inc., 2010 WL 4159566 (S.D.N.Y. 2010) in support of their argument that Plaintiffs' Second Amended Complaint fails to allege any interference with a property right. In Bishop, employees of Best Buy stopped the plaintiff and asked to see a sales receipt as he was exiting the store. When the plaintiff declined to do so, he was detained by the Best Buy employees and was not allowed to leave until he presented his sales receipt. Id. However, the Best Buy employees were actually doing the opposite of Defendant APPLE's Manager – the Best Buy employees were preventing the plaintiff from leaving the store, not denying him access to the store.

As the Court held in Bishop v. Toys "R" US-NY, LLC, 414 F.Supp.2d 385 (S.D.N.Y. 2006), a previous action brought by the same plaintiff under the same statutes, "it is doubtful that plaintiff could claim any interest in the 'property' of the store" since the plaintiff "was not denied access to the store." Id. at 395.

This is very different from the case at hand, where Defendant APPLE prevented Plaintiffs from continuing to shop at the Broadway Store.  Here, Plaintiffs are long time customers of the Broadway Store.  At the time Plaintiffs were ordered to leave the store, Plaintiffs were still looking around the store and had no intention of leaving at that point in time.  Thus, Defendant APPLE clearly interfered with Plaintiffs' right to purchase personal property because of their race by removing them from the location where the personal property could be purchased.

**III.   PLAINTIFFS' SECOND AMENDED COMPLAINT ADEQUATELY PLED A CLAIM FOR DISCRIMINATION PURSUANT TO NEW YORK STATE EXECUTIVE LAW §296(2)(a)**

A claim of discrimination pursuant to New York State Human Rights Law ("NYSHRL") section prohibiting racial discrimination in places of public accommodation is subject to the same analysis as claim of discrimination under federal law. See Drayton v. Toys "R' Us Inc., 645 F.Supp.2d 149 (S.D.N.Y.,2009).

While it is true that an employer cannot be held liable for an employee's discriminatory acts unless the employer became a part to the act by encouraging, condoning or approving it, Totem Taxi v. N.Y. State Human Rights A. Bd., 65 N.Y.2d 300 (1985), "*an employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation.*" Wal-Mart Stores East, L.P. v. New York State Div. of Human Rights, 71 A.D.3d 1452, 1453, 897 N.Y.S.2d 348, 349-350 (N.Y.A.D. 4 Dept.,2010) (internal citations and quotation marks omitted)(emphasis added); *See also* Bowling v. 220 W. 42nd St., LLC, 2011 NY Slip Op 31938 (2011) (holding "[i]f an employer fails even to discipline an employee in response to that employee's discriminatory conduct, the employer may be found to have condoned such improper conduct"); State Div. of Human Rights on Complaint of Greene v. St.

Elizabeth's Hosp., 66 N.Y.2d 684, 687 (1985) ("Condonation, which may sufficiently implicate an employer in the discriminatory acts of its employee to constitute a basis for employer liability under the Human Rights Law, contemplates a knowing, after-the-fact forgiveness or acceptance of an offense.").

In the Wal-Mart case, the court found that the employer condoned the discriminatory acts of its employee against a customer by failing to discipline the employee for such acts. Wal-Mart, 71 A.D.3d at 1453.   This is almost identical to our case, where Plaintiffs brought the discrimination to the attention of Defendant APPLE's Manager, who did absolutely nothing in response, and instead, participated in the discrimination by asking Defendant OMNISCIENT to call 911 and by helping to escort Plaintiffs out of the store.

As the court stated in Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302, 4 (W.D.N.Y. 1999), "the instant circumstances differ substantially from those in Totem Taxi in that [the employee] was not simply one of multitudinous cabbies for whose racist behavior the employer took immediate and public responsibility, but rather, given that [the employee] was the only Manager present at the time and that no statement, explanation, or apology regarding this incident has been issued by Defendant, it is impossible to discern from the facts alleged whether she acted out of personal animosity against African-Americans or pursuant to a discriminatory company-wide policy or practice.  Given Doe's alleged authority and actions, the state law claim will not be dismissed at this time." Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302, 4 (W.D.N.Y.,1999).

Defendant APPLE's Manager not only condoned Defendant OMNISCIENT's acts, but also participated in the discrimination by removing Plaintiffs from the store due to racial animus.  As such, Defendant APPLE is liable for the race-based discrimination under the NYSHRL.

IV.     **PLAINTIFFS' SECOND AMENDED COMPLAINT ADEQUATELY PLEAD A CLAIM FOR DISCRIMINATION PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE §8-107**

New York City's 2005 Local Civil Rights Restoration Act amended the New York City Human Rights Law ("NYCHRL") so that its construction would be more expansive and remedial than, and independent of, its federal and state counterparts. "The New York City Human Rights Law was intended to be more protective than the state and federal counterpart." Williams v New York City Hous. Auth., 61 AD3d 62 (1st Dep't 2009) (quoting Farrugia v. North Shore Hospital, 820 N.Y.S.2d 718, 2006.)

In fact, "[t]he legislative history contemplates that the Law be independently construed with the aim of making it the most progressive in the nation." Bumpus v. New York City Transit Authority, 2008 WL 399147, 3 (N.Y.Sup. 2008).  "[I]n enacting the more protective Human Rights Law, the New York City Council has exercised a clear policy choice which this Court is bound to honor [. . .].  Thus, the case law that has developed in interpreting both the [state and federal anti-discrimination statutes] should merely serve as a base for the New York City Human Rights Law, not its ceiling." Jordan v. Bates Advertising Holdings, Inc., 11 Misc.3d 764, 770, 816 N.Y.S.2d 310, 317 (N.Y.Sup. 2006). *See also* Guzman v. City of New York, 2010 WL 4174622, 25 (E.D.N.Y. 2010)(internal citations and quotations omitted)("courts have recently determined that claims under NYCHRL require an independent liberal construction and are no longer co-extensive with its federal counterparts."); *See also* Phillips v. City of New York, 66 A.D.3d 170 (1st Dep't. 2009); Vig v. The New York Hairspray Co., 2009 Slip Op. 6466 (1st Dep't 2009).

Moreover, the Second Circuit has completely endorsed the holdings of the aforementioned cases. *See*, Loeffler v. Staten Island University Hosp., 582 F.3d 268, 278 (2d Cir. 2009)(internal citations and quotation marks omitted)(emhasis in original)(The Restoration Act "amended the City HRL in a variety of ways, including by confirming the legislative intent to abolish 'parallelism' between the City HRL and federal and state anti–discrimination law: The provisions of this [ ] title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably–worded to provisions of this title, have been so construed. *There is now a one–way ratchet*: Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights law cannot fall").

In light of the Restoration Act, the pleading standard under the New York City Human Rights Law is more expansive than federal or state law.  Under this more lenient and remedial standard, Plaintiffs have cleared their pleading burden by an even greater margin.


**V.      DEFENDANT APPLE, AS A JOINT EMPLOYER, IS LIABLE FOR THE ACTS OF DEFENDANT OMNISCIENT'S SECURITY PERSONNEL**

Irrespective of the discriminatory acts of its own Manager, Defendant APPLE is nonetheless liable for the discrimination by Defendant OMNISCIENT's Security Personnel under 42 U.S.C. § 1982, New York State Human Rights Law, and  the New York City Human Rights Law as a joint employer.  In situations where two employers are alleged, it is often determined that a joint employer relationship exists.  "[T]he determination of whether [someone] is an employee or an independent contractor is a question of law, while the existence and degree

15

of the legal factors to be considered are questions of fact." Smith v. United States Army Corps of Eng'rs, 2011 U.S. Dist. LEXIS 54879, 10-11 (W.D.N.Y. May 20, 2011) (quoting Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2nd Cir. 1988)).

In joint employer situations, control is also the key to determining whether the employment relationship exists. Murray v. Miner, 74 F.3d 402, 404 (2nd Cir. 1996).  Because of the inherent questions of fact, whether an employment relationship exists "cannot be decided on a motion to dismiss." Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009) (citing Lihli Fashions Corp. v. NRLB, 80 F.3d 743, 747 (2d Cir. 1996); Clinton's Ditch Co-op Co., Inc. v. NLRB, 778 F.2d 132, 136 (2d Cir. 1985); Dias v. Community Action Project, Inc., 2009 U.S. Dist. LEXIS 17562, 2009 WL 595601, at *6 (E.D.N.Y. Mar. 6, 2009); Niland v. Buffalo Laborers Welfare Fund, 2007 U.S. Dist. LEXIS 77567, 2007 WL 3047099, at *6 (W.D.N.Y. Oct. 18, 2007)).

Here, Plaintiffs have alleged in their Second Amended Complaint that an employment relationship exists between Defendant APPLE and Defendant OMNISCIENT's Security Personnel.  Defendant APPLE contracted with Defendant OMNISCIENT to provide "Security Personnel" for the purpose of securing the premises at the Broadway Store in order to prevent loss from theft or other illegal actions. Complaint ¶13.   Defendant OMNISCIENT's Security Personnel have apparent authority to act on behalf of Defendant APPLE, and further, this apparent authority is communicated to the general public by Defendant APPLE permitting Defendant OMNISCIENT's Security Personnel to work within the Broadway Store without restriction, and to speak on its behalf, as was the case in the situation detailed herein. Complaint ¶15.

Moreover, as alleged in the Second Amended Complaint, Defendant APPLE, by contract, requires that Defendant OMNISCIENT's Security Personnel report all inappropriate or suspicious behavior to Defendant APPLE, as well as perform services under a standard of behavior or process set forth by Defendant APPLE. Complaint ¶¶17-18.   Defendant OMNISCIENT's Security Personnel even sometimes act as a liaison for Defendant APPLE with local law enforcement as directed by Defendant APPLE. Complaint ¶19.  In these ways and others, Defendant APPLE controls the means of carrying out the tasks required of Defendant OMNISCIENT through contractual obligation, standards and procedures, provided in writing and through oversight by Defendant APPLE's employees. Complaint ¶27.   Defendant OMNISCIENT's Security Personnel act both with apparent and limited actual authority, on behalf of Defendant APPLE, as controlled by Defendant APPLE's personnel. Complaint ¶28. The relationship which is created between Defendant APPLE and Defendant OMNISCIENT's Security Personnel is one of an employer to employee. Complaint ¶29.

Thus, the actions alleged to have taken by Defendant OMNISCIENT's Security Personnel would also be imputed to Defendant APPLE.  Reading the Complaint in the light most favorable to Plaintiffs, the allegations are sufficient to present a plausible argument that Defendant APPLE acted as Defendant OMNISCIENT Security Personnel's employer and acted through Defendant OMNISCIENT to discriminate against Plaintiffs.

**Additionally, the Second Circuit has held that employers can even be held responsible for an independent contractor's actions**.  The prohibition against discrimination "applies regardless of whether an employer uses its employees . . . or whether it uses intermediaries, such as independent contractors, to fill that role . . . **If a company gives an individual authority to . . . [act] . . . on the company's behalf, then the company may be**

**held liable if that individual improperly discriminates .** . .” Halpert v. Manhattan Apartments, Inc., 580 F.3d 86 (2d Cir. 2009).  This issue was also addressed in Robinson v. Overseas Military Sales, 21 F.3rd 502 (2d Cir. 1994), where the court held that “[a]n employer … can personally be liable for discrimination by an independent contractor … who acts for the employer.”

Therefore, it doesn’t matter whether Defendant OMNISCIENT’s Security Personnel were independent contractors or not – what matters is that they acted for Defendant APPLE and made decisions on Defendant APPLE’s behalf relating to Plaintiffs.    Therefore, Defendant APPLE is nonetheless liable for the discrimination by Defendant OMNISCIENT’s Security Personnel under 42 U.S.C. § 1982, New York State Human Rights Law, and  the New York City Human Rights Law as a joint employer.    As stated, Defendant APPLE’s motion to dismiss as to this issue should be denied.


**VI.     PLAINTIFFS ARE ENTITLED TO PUNITIVE DAMAGES**

Punitive damages have been awarded in a variety of discrimination cases based on the general reprehensible nature of the discriminatory conduct.  “Punitive damages may be awarded for a civil rights claim if ‘the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves *reckless or callous indifference to the federally protected rights of others.’ ”* Tolbert v. Queens College*, 242 F.3d 58, 77 (2d Cir.2001) (quoting Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)) (emphasis in original); *See also,* Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (holding that “the terms ‘malice’ and ‘reckless’ ultimately focus on the actor’s state of mind,” making a showing of egregious or outrageous discrimination unnecessary); Kuper v. Empire Blue Cross & Blue Shield, 2003 WL 359462 (S.D.N.Y. 2003) (denying employer’s motion for

judgment as a matter of law as to punitive damages award where employer had written antidiscrimination policy but did not present evidence that it actively trained employees or enforced the policy); <u>Greene v. Coach, Inc.</u>, 218 F. Supp.2d 404 (S.D.N.Y. 2002) (denying employer's motion to dismiss punitive damage claim even though the employer had a written antidiscrimination policy and conducted numerous training programs because it failed to provide evidence that managers at issue had undergone training); <u>Zimmerman v. Assoc. First Capital Corp.</u>, 251 F.3d 376 (2nd Cir. 2001) (punitive damage issue was properly submitted to the jury even though supervisor accused of discrimination testified that he received training in "equal opportunity" because such testimony did not prove the existence of an anti-discrimination policy, and the employer presented no evidence of implementation or enforcement of any such policy).

**As the court in Colbert v. Furumoto Realty, Inc., 144 F.Supp.2d 251, 258 (S.D.N.Y.2001) stated, "we fail to see how racial discrimination is not sufficiently reprehensible to warrant a punitive damages award."**

Lastly, under the NYCHRL, there is no absolute defense to punitive damages. Rather, the NYCHRL sets out a set of criteria which "shall be considered in mitigation of the amount of . . . punitive damages which may be imposed . . . ." 8–107(13)(e). As the <u>Thompson</u> court observed, "In view of the explicit language that these factors are only to be considered as factors in mitigating punitive damages, **they are not a complete defense sufficient to strike the claim for punitive damages** [. . .]. <u>Thompson v. American Eagle Airlines, Inc.</u>, 2000 WL 1505972, 11 (S.D.N.Y. 2000) (emphasis added).

As Plaintiffs alleged, Defendant APPLE's Manager not only condoned Defendant OMNISCIENT's discriminatory acts, but further participated in removing Plaintiffs from the store

due to racial animus.   Defendant APPLE's manager thus intentionally discriminated against

Plaintiffs, Complaint ¶59, making an award of punitive damages appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant

APPLE's Motion to Dismiss in its entirety, and order such other and further relief as this Court

may deem just and proper.

Dated: New York, New York
       August 18, 2011

                                        **DEREK T. SMITH LAW GROUP, P.C.**
                                        *Attorneys for Plaintiff*


                          By:    _____/s/_____
                                 William K. Phillips, Esq. (wp0409)
                                 Of Counsel
                                 30 Broad Street, 35th Floor
                                 New York, New York 10004
                                 (212) 587-0760


To:    Thomas M. Crispi, Esq.
       Kellen G. Ressmeyer, Esq.
       SCHIFF HARDIN LLP
       *Attorneys for Apple Inc.*
       666 Fifth Avenue, 17th Floor
       New York, NY 10103
       212-753-5000

       David L. Metzger, Esq.
       LEWIS JOHS AVALLONE AVILES, LLP
       *Attorneys for Omniscient Investigation Corp.*
       61 Broadway, Suite 2000
       New York, NY 10006
       212-233-7195