UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

BRIAN JOHNSTON and NILE CHARLES,       :

          Plaintiffs,                  :

          -v-                          :      11 Civ. 3321 (JSR)

                                       :      OPINION AND ORDER

APPLE INC. and OMNISCIENT              :
INVESTIGATION CORPORATION,             :

          Defendants.                  :

------------------------------------- x

JED S. RAKOFF, U.S.D.J.

       Plaintiffs Brian Johnston and Nile Charles bring this action asserting federal, state, and city discrimination claims arising from their allegation that defendants removed plaintiffs from an Apple Store in Manhattan on account of their being African-American.  Each of the defendants moved to dismiss the Second Amended Complaint in its entirety, and the Court, by Order dated September 15, 2011, granted their motions.  This Opinion sets forth the reasons for that ruling and directs the entry of final judgment.

       The pertinent facts, drawn from plaintiffs' Second Amended Complaint, are as follows.  On December 9, 2010 plaintiffs Brian Johnston and Nile Charles, both African-American males, visited Apple's retail store at 1981 Broadway, New York, NY 10023.  Second Amended Complaint ("SAC") ¶¶ 5, 7, 12, 33.  After purchasing headphones, plaintiffs were approached by a security guard, referred to in the Second Amended Complaint as "John Doe."  Id. ¶¶ 39, 41.

1

The complaint alleges John Doe was an employee of Omniscient who
worked in the 1981 Broadway store pursuant to Apple's contract with
Omniscient.  Id. ¶¶ 13, 39, 41.  The following exchanges then
allegedly transpired:

> John Doe told Plaintiffs, "Either you're here to see a Mac
> Specialist or to purchase something. If you are not doing either
> you have to leave the store."
>
> Before the Plaintiffs could respond, John Doe responded, "And
> before you say I'm racially discriminating against you let me
> stop you. I am discriminating against you. I don't want 'your
> kind' hanging out in the store."
>
> . . .
>
> Plaintiffs used their cell phones to record what transpired when
> another employee of Defendants' Security Personnel approached
> Plaintiffs.
>
> The second of Defendants' Security Personnel to approach
> Plaintiffs identified himself as the Head of Security and told
> Plaintiffs, "Now you have to go. If you want to know why, it's
> because I said so. CONSIDER ME GOD. You have to go."
>
> Plaintiffs asked to speak to a manager to file a complaint.
>
> Defendants' Head of Security told Plaintiffs that there was no

2

> complaint to be made and walked away from the Plaintiffs,
> deliberately ignoring their request to see a manager.
> Plaintiffs searched the retail store and found a manager. . .
> Plaintiffs complained about the John Doe's racial profiling . .
> . . Defendant [Apple's] manager asked Defendants' Head of
> Security to call 911.

Id. ¶¶ 43-53 (emphasis removed).  The Apple manager required the
plaintiffs to leave the premises with defendants' security personnel.
Id. ¶ 55.

Based on the foregoing allegations, plaintiffs' Second
Amended Complaint asserts three causes of action against both
defendants: (1) unlawful discrimination in violation of 42 U.S.C. §
1982; (2) unlawful discrimination in violation of New York State
Executive Law § 296; and (3) unlawful discrimination in violation of
the Administrative Code of the City of New York § 8-107.  Each
defendant moved to dismiss the Second Amended Complaint, in its
entirety, under Rule 12(b)(6)[1] of the Federal Rules of Civil
Procedure for failure to state a claim.

The Court first turns to plaintiffs' federal discrimination
claim under 42 U.S.C. § 1982.  Section 1982 provides: "All citizens

---

[1] Defendant Apple also moved under Rule 12(d) to convert the motion
to a motion for summary judgment.  See Apple Br. at 1.  The Court,
however, relied only on the pleadings in rendering this Opinion and
its prior Order, and declined the requested conversion.

of the United States shall have the same right, in every State and
Territory, as is enjoyed by white citizens thereof to inherit,
purchase, lease, sell, hold, and convey real and personal property."
42 U.S.C. § 1982.  Section 1982 prohibits "intentional
discrimination" based on race.  Sanders v. Grenadier Realty, Inc.,
367 F. App'x 173, 174 (2d Cir. 2010) (citing Shaare Tefila
Congregation v. Cobb, 481 U.S. 615, 617 (1987)).  To state a claim
for relief under section 1982, a plaintiff must allege that he was
intentionally "deprived of a property right" because of his race.
Grimes v. Fremont Gen. Corp., No. 08 Civ. 1024, 2011 WL 1899403, at
*16 (S.D.N.Y. Mar. 31, 2011).  These allegations must be supported by
particularized facts pled in the complaint that make out a plausible
claim for relief.  See Sanders, 367 F. App'x at 175 (quoting Ashcroft
v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

        The Second Amended Complaint does not plausibly allege that
either Apple or Omniscient deprived plaintiffs of a property right.
According to the complaint, Johnston and Charles had already
purchased headphones and had "proceeded upstairs . . . [to] the entry
level" of the Apple Store when John Doe first approached them.  SAC
¶¶ 37-39.  When John Doe approached Johnston and Charles, he did not
tell them they had to leave the store immediately.  Rather, John Doe
invited the plaintiffs to exercise their property rights by stating,
"Either you're here to see a Mac Specialist or to purchase something.

4

If you are not doing either you have to leave the store." Id. ¶ 43.
At no point does the Second Amended Complaint allege that plaintiffs
said they were going to continue shopping or, as plaintiffs' counsel
represented at oral argument, check out a floor model of the
headphones they had just purchased. See Oral Arg. Tr. at 14:24-25.

     After both this first exchange with John Doe and the second
exchange with defendants' Head of Security, plaintiffs were not
forced to leave the store.  The complaint alleges that plaintiffs
"searched the retail store and found a manager." SAC ¶ 49.  The
complaint does not allege that plaintiffs intended to see a Mac
Specialist or continue shopping, or exercise any of their other
property rights such as returning a product or asking for a repair
under an Apple warranty.

     Even after amending their complaint twice, plaintiffs'
Second Amended Complaint does not show that defendants deprived
plaintiffs of any of their property rights.  Their purchase was
complete; they were invited to continue exercising their property
rights by seeing a Mac Specialist or buying something else, and when
they failed to do so they were removed from the store.  See Bishop v.
Best Buy, Co., No. 08 Civ. 8427, 2010 WL 4159566, at *5 (S.D.N.Y.
Oct. 13, 2010) (holding no cognizable § 1982 claim where plaintiff's
contractual relationship with Best Buy had already ended when he was

stopped to verify his receipt). Plaintiffs' contractual relationship with the Apple Store had ended.

The factual allegations in the Second Amended Complaint, if true, are despicable. Johnston and Charles were discriminated against by a security guard who made no effort to hide his prejudice for them and their "kind." See SAC ¶ 44. But although the Second Amended Complaint supports a more than plausible allegation of racial animus, the complaint does not allege that plaintiffs were deprived of their property rights. Accordingly, plaintiffs' claim under section 1982 fails and must be dismissed.

The Court next turns to plaintiffs' state discrimination claim under New York Executive Law § 296. Section 296 makes it an unlawful discriminatory practice for any person associated with a place of public accommodation to "deny to such person any of the accommodations, advantages, facilities or privileges" of that accommodation. N.Y. Exec. Law § 296(2)(a).

This statute does not embrace a theory of respondeat superior or strict liability. The New York Court of Appeals has made clear that section 296 unambiguously separates the liability of an employee who discriminates from the liability of his employer; an employer "cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning,

or approving it."   Totem Taxi v. N.Y. State Human Rights Appeal Bd.,
65 N.Y.2d 300, 304-305 (1985).

    Plaintiffs argue that when the Apple Manager removed them
from the store he subjected Apple to liability by condoning or
approving the conduct of John Doe, the security guard.  See Pl. Br.
at 13.  Though not briefed, plaintiffs' counsel also argued before
this Court that the actions of Omniscient's Head of Security likewise
subjects Omniscient to liability.  Oral Arg. Tr. at 17:10-19:6.  The
term "employer" is not defined in the New York State Human Rights
Law.  But this Court's review of the case law and independent
analysis of the text of the statute convinces the Court that the
alleged actions of the Apple Manager and Omniscient Head of Security
are insufficient, as pled, to subject Apple or Omniscient to
liability under section 296.

    In Totem Taxi, one of the defendant's taxi drivers
discriminated against and harassed African-American passengers.  65
N.Y.2d at 302-03.  The passengers filed complaints against Totem Taxi
with the State Division of Human Rights.  The Division held the
company liable for violating its "duty of hiring drivers who would
not discriminate."  Id. at 303 (internal quotation marks omitted).
On appeal, the New York Court of Appeals reversed.  The court noted
that section 296 distinguishes between discriminatory acts committed
by an employee and those committed by an owner or proprietor, and

7

"expressly imposes liability only on the person who actually commits the discriminatory act." Id. at 305.   Thus, the taxi company could be liable for its driver's actions only if it had encouraged, condoned, or approved of the discriminating act.   Id.

Plaintiffs argue that when Apple's manager condoned the security guard's actions, Apple the entity became a party to those actions.   Likewise, plaintiffs argue, when Omniscient's Head of Security for the Apple store condoned the security guard's actions, Omniscient became a party to those actions.   But section 296 not only distinguishes between discrimination by the employee as compared to discrimination by the employer, it also distinguishes between an owner and a manager.   By its terms, the section applies to "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation." § 296(2) (emphasis added).   Thus, while the Apple manager or the Omniscient Head of Security could be liable for their own discriminatory actions, those actions are not imputed to Apple or Omniscient, their employers.

Plaintiffs rely on two cases where courts allowed section 296 claims to proceed against an employer based on the discriminatory acts of its manager.   Both are distinguishable from this case.   In the first, Wal-Mart Stores East, L.P. v. N.Y. State Div. of Human Rights, 71 A.D.3d 1452 (4th Dep't 2010), the New York Appellate

8

Division held that because there was "substantial evidence in the record establishing that [the employer] condoned its employee's actions by failing to discipline the employee," the employer could be held liable.  Id. at 1453.  Here, the Second Amended Complaint does not allege facts plausibly suggesting that either Apple or Omniscient was aware of discrimination by its employees and failed to take appropriate remedial actions.

In the second, Burgin v. Toys-R-Us-Nytex, Inc., No. 97 Civ. 0998E(H), 1999 WL 454302 (W.D.N.Y. June 30, 1999), the court refused to dismiss plaintiffs' section 296 claim where it was unclear whether the discriminating manager "acted out of personal animosity against African-Americans or pursuant to a discriminatory company-wide policy or practice."  Id. at *4.  Again, plaintiffs' Second Amended Complaint does not allege facts plausibly suggesting their treatment was due to a "discriminatory company-wide policy or practice" of either Apple or Omniscient.

Both of the cases plaintiffs cite rely on circumstantial evidence of knowledge or condonation by the employer in order to allow a claim to proceed against the employer for primary liability. Without any allegations of knowledge or condonation by Apple or Omniscient, the Second Amended Complaint does not demonstrate a plausible claim that either corporation is liable for discrimination. This Court hews to Totem Taxi's instruction that section 296 is not a

9

strict liability statute for employers and likewise dismisses plaintiffs' section 296 claims against both Apple and Omniscient with prejudice.

Turning to plaintiffs' third and final claim, the Court finds the Second Amended Complaint does plausibly allege that defendants violated section 8-107 of the Administrative Code of the City of New York.  The Court, however, declines to exercise supplemental jurisdiction over this remaining city law claim.

Section 8-107 lists a variety of discriminatory practices that can subject an individual to liability for discriminatory conduct.  In this case, plaintiffs have alleged a violation of § 8-107[4], which makes it an unlawful discriminatory practice "to refuse, withhold from or deny to [a member of a protected class] any of the accommodations, advantages, facilities or privileges" of a public accommodation.[2]  N.Y.C. Admin. Code § 8-107.  Defendants argue that since plaintiffs have failed to state a claim under Executive Law § 296, their claim also fails under § 8-107, as "the human rights provisions of the New York City Administrative Code mirror the provisions of the Executive Law and should therefore be analyzed according to the same standards," namely, Totem Taxi.  Apple Br. at 9

---

[2] A public accommodation is defined as: "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold or otherwise made available."  N.Y.C. Admin. Code § 8-102[9].

(quoting Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 n.3 (2004)).  Defendants' argument is mistaken; Totem Taxi is not the standard for employer liability under section 8-107[13].

Subdivision 13 of Section 8-107 defines the scope of employer liability for the discriminatory acts of employees, agents, and independent contractors.  The standard of liability for an employer differs for a case alleging discrimination by an employee as compared to discrimination by an independent contractor.  For discrimination by an employee in a place of public accommodation, the statute provides: "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one [employment discrimination] and two [apprentice training programs]."  § 8-107[13](a).  On its face, the statute makes an employer liable for the discriminatory conduct of its employee without regard to the knowledge or conduct of the employer.  This, unlike New York State Executive Law § 296, is a strict liability statute.

This Court's reading of 8-107[13](a) is confirmed by comparison to 8-107[13]'s other provisions, by the legislative history of 8-107[13], and by the New York Court of Appeals's interpretation of 8-107[13](b) in Zakrzewska v. New School, 14 N.Y.3d 469 (2010).  Subsection (b) of 8-107[13] defines an employer's

11

liability for the discriminatory actions of its employee or agent in an employment context or apprentice training context.  It specifies three conditions for liability which do not appear in subsection (a), at least one of which must be satisfied in order to impose liability on the employer: (1) the employee who engaged in the discriminatory conduct "exercised managerial or supervisory responsibility"; (2) the employer "knew of the . . . discriminatory conduct, and acquiesced in such conduct"; or (3) the employer "should have known of the . . . discriminatory conduct."  § 8-107[13](b)(1)-(3) (emphasis added). These conditions require showing some level of knowledge on the part of the employer (implicitly when the employee is a manager) that 8-107[13](a) does not require.

Subsection (c) of 8-107[13] defines an employer's liability for the discriminatory actions of its independent contractor.  It specifies that an employer is liable for the discriminatory act of its independent contractor "only where . . . the employer had actual knowledge of and acquiesced in such conduct."  § 8-107[13](c) (emphasis added).  Again, this subsection requires a showing of knowledge on the part of the employer not required for liability under 8-107[13](a).

Legislative history further confirms 8-107[13](a) imposes strict liability on employers.  Section 8-107[13] was added to the New York City Human Rights Law by an amendment passed in 1991.  See

12

Report of the New York City Council Committee on General Welfare on
Proposed Int. No 465-A and No. 536-A, Section-by-Section Analysis, at
18 (describing subdivision 13 as "new").  The Committee on General
Welfare's report states that "with respect to all types of
discrimination other than employment discrimination, an employer
would be held liable for the discriminatory conduct of an employee or
agent."  Id. at 19.  For independent contractors, on the other hand,
"an employer would be held liable for the conduct of certain persons
employed as independent contractors only where the employer had
actual knowledge of and acquiesced in the conduct."  Id.  Likewise,
in a side-by-side comparison of the pre-amendment Human Rights Law to
the amended Human Rights Law published in the Legislative Annual for
New York City, the report states that section 8-107[13] creates
"strict liability in housing and public accommodations."[3]  1991 N.Y.
City Legis. Ann., at 187.

        The New York State Court of Appeals recently clarified the
differences between section 8-107[13] and section 296 in an opinion
on a certified question from the Second Circuit.  Zakrzewska, 14
N.Y.3d 469.  In that case, the plaintiff brought an employment
discrimination claim against her employer under 8-107[13](b).  The
court rejected the defendants' attempt to tie the plaintiff to the
Totem Taxi standard as the "knowing or condoning" standard was

_____

[3] The New York Court of Appeals has relied on this document as
persuasive authority in interpreting § 8-107[13].  See Zakrzewska, 14
N.Y.3d at 480.

expressly inconsistent with the text of and legislative intent behind § 8-107[13](b).  Id. at 480-81 (distinguishing the "general statement in a footnote" in Forrest, 3 N.Y.3d at 305 n.3, that the New York City Human Rights Law mirrors the state law from analyzing the specific issue of employer liability under § 8-107[13](b)).

Although the court of appeals addressed only subsection (b) in its holding, its reasoning applies in full force to subsection (a).  Defendants' argument that Totem Taxi should apply to subsection (a) is contradicted by the text of the statute, by the legislative history of the New York City Human Rights Law, and by the court of appeals's logic in Zakrzewska.  If an employee discriminates in a place of public accommodation, the employer is liable, period. Accordingly, all that remains to be analyzed is if plaintiffs have alleged a plausible violation of § 8-107 by defendants.[4]

Johnston and Charles have alleged such a violation.  With respect to defendant Apple, the Second Amended Complaint alleges that

---

[4] While plaintiffs' Second Amended Complaint quotes in whole only the subsection addressing liability for the acts of independent contractors, the Second Amended Complaint alleges a general violation of section 8-107, without distinguishing between employees and independent contractors.  Compare SAC ¶ 72 (quoting § 8-107[4]; [13](c)), with SAC at 10 (citing § 8-107 as plaintiffs' third cause of action).  Likewise, the Seconded Amended Complaint appears to make employee and independent contractor arguments in the alternative. See SAC ¶¶ 73-74.  Although the Second Amended Complaint is far from a paragon of clarity, the Court, construing the complaint liberally and drawing all inferences of favor of plaintiffs, reads the Second Amended Complaint as alleging violations of § 8-107[4] and [13] without limiting plaintiffs' claim to either an independent contractor theory or an employee theory of liability.

the Apple Store manager discriminated against them when he instructed
Omniscient's Head of Security to call the police and remove
plaintiffs from the premises.  While the complaint does not identify
this manager by name, it is plausible on the face of the complaint to
infer that the manager was in fact an employee of defendant Apple.
The complaint alleges that plaintiffs were discriminated against
first by John Doe the security guard, and when they sought out the
Apple manager to explain what had happened, the Apple manager
furthered that discrimination by ignoring their complaints and
ordering them removed from the store they had chosen to patron.
Unlike 28 U.S.C. § 1982, the New York City Human Rights Law does not
require plaintiffs to plead interference with a property interest.
Rather, they must show defendants refused, withheld, or denied them
any of the "accommodations, advantages, facilities or privileges" of
a public accommodation.  Here, the Second Amended Complaint at least
plausibly alleges plaintiffs were denied the "facilities" of Apple's
retail store, as they were removed from the premises on what they
allege is account of their race.

     With respect to defendant Omniscient, plaintiffs have
plausibly alleged that an employee of Omniscient, security guard John
Doe, denied them access to the facilities of a public accommodation.
John Doe told the plaintiffs they had to "buy something, see a Mac
specialist" or leave, and he explicitly told them he confronted them

15

on account of their race.  As section 8-107[13](a) creates strict liability for the employer of an employee who violates section 8-107, the complaint also plausibly alleges a claim against defendant Omniscient.  Defendants' motions to dismiss plaintiffs third claim is denied.

The Court in its discretion, however, declines to exercise supplemental jurisdiction over plaintiffs' remaining claim.  See 28 U.S.C. § 1367.  This case was originally removed to federal court by defendant Apple on a theory of diversity jurisdiction, see Notice of Removal, May 16, 2011, but diversity was destroyed when plaintiffs, citizens of New York, joined defendant Omniscient, a New York corporation, in their First Amended Complaint.  See SAC ¶¶ 4, 6, 10. After Omniscient was joined, this Court continued to exercise federal question jurisdiction over plaintiffs' section 1982 claim and supplemental jurisdiction over plaintiffs' state and city law claims. But since only the city law claim remains at issue in this case, and since the facts remain very much in dispute and awaiting discovery and further motion practice, let alone trial, it makes sense at this early stage in litigation for the Court to dismiss plaintiffs' city law claim, without prejudice, in favor of the state forum from which it came.

For the foregoing reasons, the Court hereby reaffirms its Order of September 14, 2011 dismissing, with prejudice, claims one

and two of the Second Amended Complaint, brought under 42 U.S.C. § 1982 and New York State Executive Law § 296, and dismissing, without prejudice to re-filing in state court, claim three of the complaint, brought under the Administrative Code of the City of New York § 8-107.  The Clerk of the Court is directed to enter final judgment and to close the case.

SO ORDERED.


Dated:    New York, NY
          October 13, 2011               JED S. RAKOFF, U.S.D.J.

17